### R. S. ROLLINS v. MOLLIE O'FARREL ET AL.

No. 6408.

1. **Practice—Evidence.**—A judgment will not be reversed on appeal on the ground that the trial judge overruled a motion to exclude illegal testimony which had been detailed to the jury, if after its admission the judge of his own motion informed the

jury that the testimony had nothing to do with the case.  The failure to again inform. the jury that it was excluded is immaterial.

2.  **Charge of Court.**—A charge of the court which distinctly instructs the jury to find for the plaintiff unless they find certain facts have been proved (stating all the conditions that could exist under the evidence to destroy the right), is not rendered erroneous by a refusal to charge the law on which the rights of plaintiff is based.

3.  **Abandonment.**—Whether property once a homestead has been permanently abandoned for home purposes is a question of fact, in solving which the jury must consider the uses to which it has been subjected, the character of improvements made, the effect and object of temporary renting, and the intention to preserve it as a home as indicated by acts.

4.  **Same.**—It is not error to charge, when the issue is whether property has been abandoned as a homestead, that in order to find against the homestead right claimed it must clearly appear that the property once used as homestead was abandoned for homestead use.

5.  **Homestead.**—The owner of an urban homestead converted a barn into a dwelling house and leased it, and also erected another house which he leased, dividing both. from the house occupied by the family by a fence.  He claimed the entire property as his homestead, and declared his purpose to lease temporarily, and ultimately to move the tenement houses from the premises.  The jury found that the entire property was homestead.  *Held,* that there was no error.  See opinion for facts.

APPEAL from Cooke.  Tried below before Hon. D. E. Barrett. The opinion states the case.

*C. L. Potter,* for appellant. — 1.  Appellant's rights in the land in controversy having attached at the date of the registration of the abstract of the judgment against O'Farrell under which the land was sold, the court should have plainly told the jury the effect of that registration and the date of it in his charge to them.

2.  The court erred in the second and third sections of his charge to the jury in not correctly stating to them the manner in which a lot of land once claimed as a part of the homestead may be abandoned as such, and in requiring appellant to clearly prove that it was appellees' intention to permanently abandon the same as a part of the home, and in refusing. sections 3 and 4 of charges requested by appellant.  Stringer v. Swenson, 63 Texas, 12; Medlenka v. Downing, 59 Texas, 36; Andrews v. Hagadon, 54 Texas, 574; Thomp. on Home. and Ex., secs. 130, 137; 33 Cal., 220; 11 Mich., 527; 16 Wis., 114.

3.  The verdict and judgment were contrary to the evidence in that the evidence showed that the land in controversy had been separated from the homestead of the defendant by large fences and permanent improvements and was entirely abandoned as to homestead use by the defendant, and there was no intention to ever again use the same.

*Davis & Garrett,* for appellees. — 1.  Even if it should be held that appellant, on and after November 17, 1885, had a lien on all the land of A. C. O'Farrel situated in Cooke County, still the court correctly submit--

ted the issues to the jury, for under the evidence the date of such lien, if any, was of no importance.

2.   The evidence is sufficient to sustain the verdict of the jury.

COLLARD, JUDGE.—On June 26, 1883, A. C. O'Farrel, a married man and head of a family, having no homestead, purchased of J. T. Spears a piece of land in Gainesville, Cooke County, Texas, fronting 100 feet to the east on Dixon Street and running back 315 feet west, Cummings Street being on the south.   The residence was on the east end of the lot fronting on Dixon Street, and at the time of the purchase there were on the west end a barn, a bath house, and a cistern house, all enclosed in one fence and all used in connection with the homestead residence, there being a fence dividing the barn, the bath house, and cistern from the residence part of the place.   At the time of O'Farrel's purchase he said he was buying it for a homestead for himself and family, and he immediately moved on the premises with his family, where he remained until August, 1886, when he died, and his widow and children have since occupied it. Shortly after O'Farrel moved on the place he converted the barn into a residence and moved it so as to front on Cummings Street; he also moved the bath house and the cistern house, attaching two rooms to them so they could be used as a dwelling.   The barn dwelling has five rooms, three downstairs and two upstairs, and has dormer windows.   A new but a smaller barn with a buggy house was built for use on the property not in controversy.   One fence encloses all the property; there is a high board fence separating the tenant houses from the residence proper, and a light fence between the two tenant houses.   After the houses were so moved and changed, O'Farrel rented them, when tenants could be found, up to his death.

It was in proof that O'Farrel had the barn and other houses changed into dwellings with the intention to make them more valuable, and in order to sell them and have them moved off the place if a purchaser could be found.   Before the change he had been using the ground as a horse and cow lot, and his stock partner suggested to him the change so that the houses could be rented for enough to pay for the keeping of their saddle horses at the livery stable.   It was also in proof that he several times, about the time when plaintiff's abstract of judgment was filed for record and afterwards, offered the tenant houses for sale, but required the purchaser in all cases to move them from the land, and that he always claimed the whole of the ground as his homestead; and it was also proved that these houses were to be used as such temporarily—that they were upon a stone foundation, not let in the ground, and so placed that they could be easily moved.

On November 6, 1885, plaintiff R. S. Rollins recovered judgment in the District Court of Cooke County against A. C. O'Farrel and others

for $26,289, costs, etc., an abstract of which was made, indexed, and duly recorded in the record kept for such purposes in the office of the county clerk of Cooke County on the 17th day of November, 1885. On June 8, 1886, execution issued, and on the 14th of same month was levied on the 115 feet of land including the tenant houses in controversy, which was in due course sold and deed made to plaintiff July 6, 1886. Plaintiff on this title sued for the land on September 6, 1886, nearly one month after the death of O'Farrel. The trial by jury resulted in verdict and judgment for defendants, and plaintiff has appealed.

The first error assigned is that the court erred in refusing to strike out the testimony of John Walker as to the size and condition of his homestead, as shown by bill of exceptions No. 1. Walker's homestead was on the north of the O'Farrel place, was out of the same block, and was the same size as the one claimed by defendants. He answered questions as to such relative positions and size of the two places, the place of his residence and some out houses on his premises, there being no objections made. It was this evidence that plaintiff moved to exclude. The court, it seems, had already of its own motion excluded it, and stated to the jury that it had nothing to do with the case, and hence he declined to exclude it again. This is the trial judge's view of it as shown by an explanation attached by him as a part of the bill of exceptions. We take it the explanation destroys the exception, and that there is in fact no exception to the testimony, and no cause to complain.

Appellant makes one proposition under his second and third assignments of error without copying or stating the substance of the assignments. The proposition is as follows:

"Appellant's rights in the land in controversy having attached at the date of the registration of the abstract of the judgment against O'Farrel under which the land was sold, the court should have plainly told the jury the effect of that registration and the date of it in his charge."

An examination of the court's charge plainly shows that the court assumed that there was such lien; in fact he told the jury to find for plaintiff under his title if there was or had been an abandonment as claimed. It was unnecessary to analyze the title and state the particulars that made it a good title. The charge gave plaintiff the land in case it had been abandoned at any time.

The first clause of the charge instructs the jury that plaintiff's judgment, execution, levy, and sheriff's deed established plaintiff's title to the land in suit if the same was never any part of the homestead, and in such case to find for him.

In the second clause he instructs them as follows: "The land in controversy was purchased by A. C. O'Farrel from J. T. Spears, and at the same time and as a part of the same transaction he purchased the land on which the defendants reside and on which are situated their dwelling

house and some out buildings, and it is for you to determine from the evidence whether O'Farrel and his wife used the land in controversy as a part of their homestead. If they did, you will find for the defendants, unless you believe from the evidence that the said O'Farrel abandoned the same as a part of his homestead. A homestead in a town or city may consist of one or more lots; it is not necessary that they be in the same enclosure, nor need they be used for any special purpose; they may be used for gardens, lots, or for any purpose necessary to the enjoyment of the premises as a home for the family." And then the charge proceeds in the third paragraph as follows:

"If you find that the land in controversy was ever a part of the homestead of O'Farrel and wife, then you will determine whether the same has been abandoned as such. In ascertaining whether or not it has been abandoned as a homestead you will look to all the evidence in the case—the uses to which the property is put, the character of the improvements upon the same, as well as all of the other testimony—and if, from all the testimony, it clearly appears that the same was permanently abandoned by said O'Farrel in his lifetime as his homestead, you will find for the plaintiff; but if you find that the abandonment of said premises, if any, was only temporary and without a fixed intention on the part of said O'Farrel to permanently abandon it as a part of his homestead, you will find for the defendants. The owner of a homestead may temporarily rent the same or any part of it, and if he do so in good faith, with no intention of permanently abandoning the same, he will not thereby lose his homestead right; but if he erect a building upon a portion of his homestead for the purpose of permanently and continuously renting it, and with a fixed intention to never again use it for homestead purposes, he thereby forfeits his homestead rights in the same. But the erection of a house upon a portion of his homestead for the purpose of temporarily renting the same, and with the intention of having such house removed and afterwards resuming the same as his homestead, will not work such a forfeiture."

Having this much of the charge before us, it will at once be seen that the court did tell the jury what the legal effect of plaintiff's title was as favorably as the facts warranted; first, that it entitled him to a recovery if the land in controversy had not been used as a homestead; second, that if it had been used as a part of the homestead it would be protected against plaintiff's claim unless it were shown that it had been abandoned; and third, that if it had been abandoned plaintiff's title should prevail. These were the elements constituting the rights of the parties as applicable to the facts, and they gave full force to plaintiff's title with the lien by registration of the judgment and the levy. Cline v. Upton, 56 Texas, 320; Medlenka v. Downing, 59 Texas, 32; Thomas v. Williams, 50 Texas, 273; Langston v. Maxey, 74 Texas, 159; Newton v. Calhoun, 68 Texas, 451.

Appellant complains that the court erred in not correctly stating to

the jury in his charge the manner in which a lot of land once claimed as
a part of the homestead may be abandoned as such, and in requiring ap-
pellant to clearly prove that it was appellee's intention to permanently
abandon the same as a part of the home, and in refusing sections 3 and 4
of appellant's requested charges.

It was only necessary that the court instruct the jury as to the law ap-
plicable to the facts in evidence. We think this was done so that the
jury could understand what the issue of abandonment was under the
facts. It has frequently been decided that if the homestead or a part of
it be "applied to uses which clearly show an intention no longer to use it
for purposes of a home," it loses its homestead character.

The question was abandonment or not—whether the lot in suit had
been so abandoned by the changes made in it and its uses. The court's
charge required the jury to "look to all the evidence to determine this
question, the uses to which the property is put, the character of the im-
provements," etc. The effect of a temporary renting and an intention to
permanently rent was explained, and everything was said that was neces-
sary to put the jury in possession of the law that had to be applied to the
case. It was not necessary to charge upon every distinct fact that indi-
cated a change in the uses of the property and the change in the character
of the improvements. The charge was equally fair to both sides, and
needed no amendments by the additional charges asked. We think the
charge sufficient.

Appellant criticises the following extract from the charge: "And if
from all the testimony it *clearly* appears that the same was permanently
abandoned," etc. Where certain lots constituted the homestead in a
city, Justice Stayton said, "Before either of them will cease to be a part
of it  *  *  *  it must be applied to uses inconsistent with the uses for
which the homestead is protected—to uses which *clearly* show an inten-
tion no longer to use it for purposes of a home." Newton v. Calhoun,
68 Texas, 451.

The same language is quoted approvingly by Justice Gaines in Lang-
ston v. Maxey, 74 Texas, 161.

Chief Justice Hemphill used much stronger language in Gouhenant v.
Cockrell, 20 Texas, 98. He said: "Admitting, however,  *  *  *  that
where there is an abandonment with a fixed intention not to return, the
property may be opened to creditors; yet it must be undeniable clear and
beyond almost the shadow at least of all reasonable ground of dispute that
there has been a total abandonment with an intention not to return and
claim the exemption."

We do not mean to say that such language should be used in a charge—
we think it would be improper to do so; but we see that our Supreme
Court requires certain and conclusive evidence of abandonment with no
intention of returning to subject property once the homestead to execu-

tion. We do not think the charge of the court in this particular is in violation of law. It would have been a good charge if the word "clearly" had been omitted, but we can not hold it was error.

The foregoing discussion and conclusions will dispose of the seventh, ninth, and tenth assignments of error adversely to appellant. Section 9 of plaintiff's requested charges is abstract; the court's instructions, as we have before said, upon the issue of abandonment of the land in controversy was the law of the facts of the case and was sufficient.

Appellant makes no propositions on his assignments 11, 12, 13, and 14, nor does he copy them in his brief. They will be considered as abandoned.

The fifteenth and last assignment relates to the verdict of the jury, and insists that it "was contrary to the evidence, because the evidence showed that the land in controversy had been separated from the homestead of defendants by large fences and permanent improvements, and was entirely abandoned as to homestead use, and there was no intention ever again to so use the same."

We have seen that the testimony shows it was the intention of O'Farrel at the time he made the changes in the property and constructed the tenant houses that they were not to be rented permanently, but that they were to be rented only for a time until they could be sold and moved from the premises; he claimed the land as a part of his homestead, and so offered to sell the houses until a short time before his death, directly after which this suit was brought. Mrs. O'Farrel also testified to these facts and that the whole of the land had been so claimed down to the time of the trial.

Finding no error, we conclude the judgment should be affirmed.

*Affirmed.*

Adopted April 29, 1890.