THORNTON v. WEAR et al. (No. 8807.)

(Court of Civil Appeals of Texas. Ft. Worth. March 30, 1918. Rehearing Denied May 4, 1918.)

1. HOMESTEAD ☞168—ABANDONMENT.

Findings that tenant houses were built on homestead property as a sole means of support for the family, and were never intended to be sold, but were to be kept for the use of their children, are consistent with a finding that premises had been abandoned as a homestead, although, under Const. art. 16, § 51, homestead property rented temporarily only does not lose its homestead character.

2. HOMESTEAD ☞181(2, 3)—ABANDONMENT—RENTING—PROOF OF ABANDONMENT.

Whether renting of homestead property is temporary is a question of fact to be determined by the physical facts and circumstances, as well as the owner's testimony, and such physical facts may be of such probative force as to be controlling against the testimony of the owner.

3. APPEAL AND ERROR ☞930(3)—FINDINGS—PRESUMPTIONS IN SUPPORT OF JUDGMENT.

In the absence of any finding by the jury that a homestead was never abandoned, a finding by the court to the contrary must be presumed in support of a judgment of abandonment.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by Mrs. Julia A. Thornton, as independent executrix of the will of John A. Thornton, deceased, and in her individual right, against W. O. Wear and others to enjoin the sale under execution of an alleged homestead. From judgment in her favor for part of the relief asked, plaintiff appeals. Affirmed.

McLean, Scott & McLean, of Ft. Worth, for appellant. J. C. Terrell and Geo. W. Polk, both of Ft. Worth, for appellees.

DUNKLIN, J. This suit was instituted by Mrs. Julia A. Thornton as independent executrix of the will of her deceased husband, John A. Thornton, and in her own individual right, to enjoin the sale under execution of the west half of a lot in the city of Ft.

Worth, fronting east 100 feet on Adams street and north on Daggett avenue 200 feet, and being 100 by 200 feet in area, upon allegations that the same was exempt from forced sale because it was a part of the homestead of herself and her deceased husband, John A. Thornton, during his lifetime, and has been a part of her homestead ever since his death. The threatened sale of the property was under and by virtue of an execution levied thereon, issued under a judgment recovered against Mrs. Thornton as independent executrix of the last will and testament of her deceased husband; the basis of the judgment being an indebtedness incurred by John A. Thornton, unsecured by any character of lien.

At the time the suit was instituted a temporary writ of injunction was issued restraining the sale pending a hearing of the case on its merits, but on final trial of the merits the writ was dissolved as to all the property covered by the levy, except a narrow strip along its east side upon which is located a buggy shed and servant's room, and which was decreed to be a part of plaintiff's homestead, consisting chiefly of the east half of the entire lot, and as to the strip so excepted from the order of dissolution, the temporary injunction was made perpetual. From that judgment plaintiff has appealed.

The trial was before a jury, who returned a verdict in answer to special issues as follows:

"Was the west one-half of the 100 by 200 feet of land upon which plaintiff and her husband lived ever used for the purposes of a garden and other purposes by plaintiff and her husband, and were the other buildings, such as barns and outhouses on said west one-half of said lot, and were said garden and outhouses, if any, used by plaintiff and her husband as part of their homestead and for homestead purposes prior to the building of the two houses on the west end of said lot? Answer: Yes.

"Is the picket fence between the old house of plaintiff and one of the new houses on the division line between west 100 feet and said lot and the east 100 feet? Answer: Yes.

"At the time of the levy herein, was the building used by plaintiff and her husband in his lifetime as a coalhouse, servant's house, etc., located in part on the west 100 feet of said lot, and was said house used by plaintiff when living in the old house for her convenience as part of her homestead? Answer: Yes.

"Did John A. Thornton, when said new houses were built or either of them, intend to use one of them as a place of residence for himself and his family? If yes, which one? Answer: No.

"Did John A. Thornton or Mrs. Thornton ever intend to sell or otherwise permanently dispose of said west 100 feet of said lot, except to save it for their use and as a home for their children after their death? Answer: No.

"Did John A. Thornton or his wife, plaintiff in this suit, have any income or any source of support after building said houses except for rents thereof? Answer: No.

"Did John A. Thornton at the time of his death or has Mrs. Thornton any other property, except the 100 feet by 200 feet of land located on the corner of Daggett and Adams street in

the city of Ft. Worth, with improvements thereon? Answer: No.

"Was John A. Thornton solvent or insolvent at the time of his death? Answer: Not solvent.

"Were two dwelling houses erected on the west end of the original 100 by 200 feet owned by John A. Thornton separated from each other by fence, and were they separated by fence from the lot occupied by the said John A. Thornton and Julia A. Thornton on the corner of Daggett avenue and Adams street? Answer: Yes.

"What use did John A. Thornton make of said property and the two houses erected by him on the west part of said property during his lifetime? Answer: Rented for profit.

"What use has his wife made of them since his death? Answer: Rented for profit until deed to her daughters and grandchildren.

"If you find any improvements had been erected on the west part of the 100 by 200 feet, were the same necessary or intended for the convenience of the family? Answer: Were not erected for the convenience of the family.

"Were they rented or leased in order to produce an income or profit for support and maintenance? Answer: Yes.

"Prior to the death of John A. Thornton, deceased, was the house located on the extreme west part of the 100 by 200 feet and fronting north on Daggett avenue ever fenced off from the other part of said 100 by 200 feet rented? Answer: Yes.

"State whether or not the fence and barn as located at the time of the death of John A. Thornton, deceased, on the east of the second or middle house constituted the east line of the middle lot. Answer: No.

"After the erection of the house on the extreme west half of the 100 by 200 feet and the erection of the house east of said west house and fence and west of the fence and barn on the lot occupied by John A. Thornton as his home, did he and wife continue to occupy the property fronting east 100 feet on Adams street and running back west on the south side of Daggett avenue to the fence running north and south through said block as a home, and have they ever occupied any other property as a homestead since the erection of said house? Answer: First, Yes; second, No."

It thus appears that the property in controversy was originally a part of the homestead of John A. Thornton and wife, and the only real issue remaining was whether or not it was later and before the levy of the execution abandoned by appellant and her husband for that use.

By different assignments appellant insists that the jury found in effect that such abandonment did not occur, and that therefore the trial court erred in not rendering a judgment in her favor perpetually enjoining the sale of all the property in controversy in compliance with her motion for such a judgment. We do not so construe the jury's findings. Certainly there is an absence of any specific finding to that effect, and none which in our opinion can be construed as substantially of that import. On the contrary, the findings strongly indicate that the property was abandoned for residence homestead purposes. Blum v. Rogers, 78 Tex. 530, 15 S. W. 115; Langston v. Maxey, 74 Tex. 155, 12 S. W. 27.

[1] Appellant and her husband erected and rented the tenant houses upon the property as a means of support for the family, and had no other means of support, but those facts, in connection with the further fact that they never intended to sell it, but intended to keep it for the use of their children after their death, are entirely consistent with an intention never again to use it for residence purposes. Unquestionably it is the law that a temporary renting of property once impressed with residence homestead character does not of itself destroy that status, provided that during the period of such renting the owner has the intention to again use the property for residence purposes. Constitution of Texas, art. 16, § 51; Newton v. Calhoun, 68 Tex. 451, 4 S. W. 645; Rollins v. O'Farrell, 77 Tex. 90, 13 S. W. 1021. If such property is rented, the test whether or not it continues as a part of the homestead is whether such change of use was temporary only with the intention on the part of the owner again to use it for residence purposes after the cessation of such temporary renting.

[2] That is an issue of fact to be determined by all the physical facts and circumstances in evidence in connection with the testimony of the owner if he testifies in favor of the exemption, and such physical facts may be of probative force so strong as to be controlling as against the testimony of the owner supporting his claim of the exemption. Langston v. Maxey, 74 Tex. 155, 12 S. W. 27; Blum v. Rogers, 78 Tex. 530, 15 S. W. 115; Hendrick v. Hendrick, 13 Tex. Civ. App. 49, 34 S. W. 804; Autry v. Reasor, 102 Tex. 128, 108 S. W. 1162, 113 S. W. 748.

[3] In the absence of any finding by the jury that the property was never abandoned for homestead uses, a finding by the court to the contrary must be presumed in support of the judgment, and the facts' recited in the jury's verdict aside from other evidence were ample to support the finding.

From the foregoing conclusions it follows that all assignments of error must be overruled, and the judgment of the trial court must be affirmed; and it is so ordered.

Affirmed.