## McCLENDON v. BROWN et al.

### No. 9876.

Court of Civil Appeals of Texas. Galveston.

July 20, 1933.

Rehearing Denied Sept. 20, 1933.

Will C. Perry and Ira B. Simmons, both of Houston (Stewart & De Lange and Albert J. De Lange, both of Houston, on motion for rehearing), for appellant.

John J. Sargent and P. Harvey, both of Houston, for appellees.

PLEASANTS, Chief Justice.

The following statement of the case is substantially taken from appellant's brief:

This suit was brought by J. W. Barber, administrator of the estate of Moses Brown, deceased, joined by Irene Brown and Moses Brown, Jr., and George Brown, surviving wife and children of Moses Brown, deceased, as plaintiffs, against Charles C. McClendon, defendant, for the recovery of the title and possession of lot No. 1 in block No. 3 of the Forbush addition to the city of Houston in Harris county, Tex.

Plaintiffs in their first amended original petition allege that Moses Brown departed this life intestate on the ——— day of ———, 1929, and that at the time of his death said Moses Brown was seized and possessed of the above-mentioned property and premises, which was the only real estate owned by him at his death; that he had been married to Irene Brown for a number of years prior to his death, and that at his death he was survived by his said wife, Irene Brown, and two minor children, namely Moses Brown, Jr., and George Brown; that the said property and premises was the

homestead of the said Moses Brown and wife; that plaintiff J. W. Barber was appointed by the county court of Harris county as administrator of the estate of said Moses Brown on the —— day of ——, 1929, and that said J. W. Barber, as such administrator, went into possession of the said property, the widow and children of the said Moses Brown, deceased, being temporarily absent from the said premises, said Irene Brown being then employed in Galveston county; that after said J. W. Barber had taken possession of the property, as such administrator, the defendant, Charles C. McClendon, had unlawfully withheld the same from the said J. W. Barber.

In what is termed by plaintiffs as the second count of their amended petition, it is alleged, in substance, that the defendant, McClendon, was claiming title to such property through and under a deed from the American Mortgage Corporation of Dallas, Tex., and that the American Mortgage Corporation had claimed to have acquired the property by virtue of a foreclosure by trustee's sale and deed made under a certain deed of trust executed by Moses Brown to J. W. Thompson, trustee for Herbert W. Jester, dated March 21, 1928, the deed of trust having been executed by Moses Brown to secure an alleged loan of $698.75.

Plaintiffs alleged that the mortgage or deed of trust was void for the following reasons: (a) That the said premises at the time such mortgage was executed was the homestead of said Moses Brown and wife, and Moses Brown being then legally married to Irene Brown, with whom he was then living as his wife. (b) That the said Irene Brown never joined in the execution of the deed of trust or mortgage. (c) That the foreclosure proceedings by which the trustee undertook to secure the premises were without notice of any kind to Irene Brown, or to the said J. W. Barber, as the administrator of said estate. (d) That the money, if any such was ever advanced to Moses Brown, evidenced by such deed of trust or mortgage, was not for any improvements on the property, or for any part of the purchase money or other existing lawful lien. Plaintiffs prayed for judgment for the recovery of title and possession of such property, for rents and damages, and for decree of court declaring the claim of defendant, Charles C. McClendon, to be void and of no effect.

Defendant, Charles C. McClendon, answered by general demurrer, certain special exceptions, a general denial, plea of not guilty, and plea of improvements made in good faith. He especially denied that the plaintiff, J. W. Barber, was in fact the legally qualified administrator of the estate of Moses Brown, deceased, for the reason that it affirmatively appeared from the face of the record in the matter of the probate proceedings in the county court of Harris county that Moses Brown, deceased, at the time of his death, was a citizen and resident of Galveston county, and that he died in Galveston county, by reason of which the county court of Harris county had no jurisdiction in the matter of the estate of Moses Brown, deceased, and that the attempted appointment of said J. W. Barber, as such administrator by the county court of Harris county was wholly void and without force and effect.

Defendant specially denied that the property in question was ever at any time the homestead of the said Moses Brown and wife, alleged that same was the separate property of Moses Brown, and with particularity set out and alleged the execution of a deed of trust by Moses Brown to C. V. Thompson, dated March 21, 1928, recorded in volume 396, page 493, of the Mortgage Records of Harris County, whereby Moses Brown conveyed the property to such trustee to secure the payment of an indebtedness of the said Moses Brown to Herbert W. Jester, amounting to the sum of $698.75, evidenced by note of even date with the deed of trust, executed by Moses Brown, payable to order of Herbert W. Jester, such note being payable in thirty-six monthly installments of $19.41 each, beginning April 20, 1928, with provisions for accelerated maturity; alleged facts bringing about the accelerated maturity of the said note, the declination of C. V. Thompson to act as such trustee, the appointment of Bryant P. Seay as substitute trustee under the terms of the deed of trust, the sale of such property by said substitute trustee on the first Tuesday in October, 1929, to American Mortgage Corporation, and the conveyance thereof by the American Mortgage Corporation to the defendant, Charles C. McClendon.

The cause was tried before a jury in the court below. Under special issues submitted to the jury by the court, the jury found that the property in question was the homestead of Moses Brown and Irene Brown on March 28, 1927, the date of the paving lien held by intervener, and on the 21st day of March, 1928, the date of the deed of trust from Moses Brown to C. V. Thompson, trustee, and that Irene Brown and Moses Brown, prior to their marriage under license by a preacher, consummated a common-law marriage.

On the verdict rendered by the jury the court entered judgment in favor of plaintiffs under date of July 1, 1931, for the recovery of title and possession of the property, and canceling and annulling the deed of trust from Moses Brown to C. V. Thompson, trustee, the deed from Bryant P. Seay, substitute trustee, to the American Mortgage Corporation of Dallas, Tex., and the

748

deed from the American Mortgage Corporation of Dallas, Tex., to Charles C. McClendon, to which judgment of the court the defendant, Charles C. McClendon, excepted and gave notice of appeal. The suit of the intervener was dismissed on his own motion.

The appeal was duly perfected, and the case is before this court for decision.

Under appropriate assignments and propositions, appellant assails the judgment of the trial court on three grounds:

He first contends that there is no evidence to sustain the verdict of the jury that the property in controversy was the homestead of Irene and Moses Brown on March 21, 1928, when the deed of trust under which appellant deraigns title was executed, or at any time after Moses and Irene were legally married on May 10, 1926, "and no evidence that Moses Brown after he became the husband of Irene ever at any time formed or expressed the intention of residing upon or making said property his homestead, at any definite future time."

His second contention is that there is no evidence to sustain the finding of the jury that Irene and Moses Brown had consummated a common-law marriage at any time prior to their ceremonial marriage in 1926.

By his third proposition he asserts, in effect, that the judgment cannot be upheld because the plaintiff J. W. Barber, who, as administrator of the estate of Moses Brown, deceased, joined by the plaintiffs Irene and George Brown, brought this suit, was not authorized to act as such administrator, there being no valid administration upon the estate of Moses Brown for lack of jurisdiction in the county court of Harris county to administer such estate. The facts upon which this contention is based will be hereinafter stated.

None of these objections to the judgment can be sustained.

Irene Brown testified, in substance, that she began living with Moses Brown as his wife in 1915 in Galveston. Neither of them were married prior to that time. In 1916, they moved from Galveston to Houston and lived on the property in controversy. They moved to and lived on this property, which Moses had acquired by devise shortly before they went to live on it, and made it their home. They always claimed it as their home and owned no other real property elsewhere, lived in a rented house during all the time they lived in Galveston, and never rented their home in Houston to any one. She further testified that, during the time in 1916 and 1917 that she lived on the property in Houston, Moses was rooming at Galveston, but not living there. "He was staying in Houston and working at Galveston, but came back and forth, did the work and came back.

He was employed there regularly and was foreman of one of the crews and he held that position and was engaged in that kind of work when he became sick before he died. He worked until about three months before he died, but he was sick. I testified on direct examination of having lived in Houston in 1916; it is a fact that in 1916 Stella Howard was living at this place. She continued to live on this place until four or five years ago. It is not a fact that I came here and spent a little while with Stella Howard on a visit. I was not married to Moses Brown until May 10, 1926. I do not know whether he executed a mortgage on this property in April 1926 before he married me. He did not tell me anything about mortgaging the property."

Irene Brown further testified on cross-examination: "Moses Brown was working in Galveston in 1915 when I began living with him. He came to this place in Houston in 1916. I did not count the times I came, but I stayed there in 1916. I stayed there a year. I stayed there all of 1916 and part of 1917. I stayed there the first part of 1917, about the first six months. That is the best of my recollection. At that time Brown was back and forth from Galveston to Houston; sometimes he would stay a week and over night. At that time he was working regularly. He came to Houston once and sometimes twice a week. I stayed in the house. Had common furniture in the house at that time, a bed, dresser and chairs. There was furniture in each room, heater in each room. I cooked there. I rented place in Galveston when I went there. Visited in Houston in 1918 and stayed at this house; came to Houston about twice in 1918. Stella Howard was living in the house then. Moses worked on this house, the homestead, in 1919, fixing the house. She visited Houston in 1920 about three times and same in 1921. Always stayed in this house on her visits to Houston; she and Brown and their children lived in the house in 1917: she made trips several times a year to Houston in 1922, 1923 and 1924. In 1928 she and Moses came to Houston, brought paper and paint and painted and papered the house; no one was living in the house at the time they were repairing it; Stella Howard moved across the street; they did not try to rent the house, it was not for rent."

On redirect examination she testified it must have been in 1927 that they painted the house; that they brought the paint to put on the property, which "was the only home I had." The property was never rented out during the time Brown owned it. Stella Howard paid no rent. Witness still claims the property as her homestead.

Frank Carter testified that he became acquainted with Moses Brown about 1920, and Brown told him that he owned property in

Houston, and had some repair work to do on it, and that he did some work on it during the dull season. Witness testified he came up once and did some papering on the house, and that Brown told him he (Brown) was going to live on it. That was three or four years after he first met Brown; and that he often heard Brown discuss the property. "He figured on some day he was going to live in Houston and have a home for his children."

Emma Carter testified she heard Brown mention owning property in Houston, first the same year she met him, in 1920, and he came back and forth to do repair work on the place, he and the boy and the baby and his wife; mentioned their homestead in Houston; said he was going to come up here to live, and at the time he took sick was planning to move up here. . In 1920, he said he had some things up here he was going to come and get for his wife, one was a sewing machine and the other a piano; he then mentioned the property in Houston as his homestead, and was planning to come up here to live shortly after he got those articles, "and told my husband and I he wanted us to come and live with him in his place; that was somewhere about 1928 and 1929. In 1920 he would come over and sit down quite often and told how he got it; and held it out as his home, and claimed it as his home."

Both Frank and Emma Carter testified that in 1920 Moses Brown introduced Irene to them as his wife; that they lived together and held themselves out to others as husband and wife. Emma Carter testified: "She knew Moses and Irene Brown, first met Moses Brown about 1920, in Galveston; and met Irene Brown at the same time. Moses introduced Irene to her as his wife. She lived in the same neighborhood from the time she first met them up until Moses Brown's death;· they went to church together, and he introduced her to other people as his wife, at the church."

Emma Allen testified:

"She knew Irene Brown since 1916. Knew Moses Brown in the Fifty Ward of Houston, for about 19 years; knew Moses before she knew Irene. She met Irene Brown in 1916. They were living on the property in controversy in 1916, as husband and wife; and they lived there about three years and went to Galveston; that she knew of four children Irene and Moses Brown had—two dead and two living.

"Q. Do you know whether or not Moses Brown introduced Irene Brown as his wife when he was living in Houston? A. Yes, that is the way I met her.

·"Q. Did he hold her out as his wife? A. Yes, sir, her husband and my husband were

longshoreman, and they both come back here every two weeks.

"Q. Where was Irene Brown living? A. On Clark Street."

. On cross-examination she stated she was living, in 1916, where she was living at the time of the trial, at No. 2015 Granger street, Houston. She testified that Moses Brown introduced Irene Brown to her as his wife.

■ We think this evidence is amply sufficient to sustain the findings of the jury that the property in controversy was the homestead of Moses and Irene Brown at the time the deed of trust under which appellant claims title was executed; and that Irene and Moses Brown became husband and wife by a common-law marriage before 1926, when they were married under our statute providing the manner in which marriage contracts are to be made and celebrated.

The evidence shows that a common-law marriage was consummated in 1915 at Galveston, and that in 1916, after such marriage, Irene and Moses established their home upon this property, and lived together thereon as husband and wife for a year or more, when they returned to Galveston where Moses had employment as a dock worker.

They acquired no other homestead after their return to Galveston, and the evidence shows that they never permanently abandoned their Houston homestead, never rented it to any one, returned to it several times each year of their sojourn in Galveston, repaired and improved it; and always intended to return to Houston and renew their use of this property as the home of themselves and their children. Moses, in contemplation of returning to and renewing his homestead· use of this property, repainted the house and made other repairs thereon shortly before his last sickness, which lasted for several months and culminated in his death in 1929.

■ The validity of common-law marriage has long been recognized by the courts of this state, and neither the issuance of license nor an official or ministerial ceremony is necessary to make marriages in this state lawful and binding, and to confer upon the· parties entering into common-law marriages all of the property rights which attach to contracts of marriage consummated in strict compliance with the statute (Vernon's Ann. Civ. St. arts. 4602, 4604) providing for the issuance of marriage licenses 'and an official or ministerial marriage ceremony.

■ The essential elements of a valid common-law marriage are all shown by the evidence before set out. Irene and Moses agreed to become husband and wife, and consummated that agreement by cohabiting as

husband and wife, and by often publicly proclaiming their marriage status. A number of children were born to them as fruits of their cohabitation. Their friends and associates, so far as shown by the evidence, all regarded them as husband and wife from the time they began to live with each other on the property in controversy. This agreement to become husband and wife, and to thenceforth live together and cohabit as such, continued until the death of Moses. The fact that in 1926, more than ten years after the consummation of their common-law marriage, they procured a marriage license and had a marriage ceremony performed by a minister, in no way weakens the force of the evidence showing that their lawful status as husband and wife was fixed when they established their home on the Houston property, and continued uninterruptedly until the death of Moses. The agreement to become husband and wife may be expressed or implied, and the evidence in this record is amply sufficient to show such implied agreement, if the testimony of Irene does not sufficiently show such express agreement between herself and Moses. Berger v. Kirby et al., 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182; Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Gorman v. Gorman (Tex. Civ. App.) 166 S. W. 123; Davis v. Jeffords-Schoenmann Produce & Brokerage Co. (Tex. Civ. App.) 261 S. W. 401.

■ That the homestead rights of Irene and Moses in the property in controversy were not abandoned or lost by their continued residence in Galveston, where Moses was employed, is, we think, well settled by the authorities. They owned no other real estate, and lived in a rented house during all the time they lived in Galveston.

The rule announced by our Supreme Court, in determining the question of abandonment of a homestead before a new homestead is acquired, is thus stated in the case of Cross v. Everts, 28 Tex. 523: "The rule to be extracted from the cases of Shepherd v. Cassiday, 20 Tex. 29 [70 Am. Dec. 372], and Gouhenant v. Cockrell, 20 Tex. 96, where this question was discussed and decided by our predecessors in this court, and which is believed to be the correct one, is, that if it be admitted that an old homestead may, in opposition to this general rule laid down by Judge Story with regard to the change of domicil, be abandoned before the acquisition of a new one, it can only be on the most clear, conclusive, and undeniable evidence of abandonment of the homestead."

Among many other cases that approve and follow this rule are Scott v. Dyer, 60 Tex. 135; Rollins v. O'Farrel, 77 Tex. 90, 13 S. W. 1021; Ritz v. Bank (Tex. Civ. App.) 234 S. W. 425; and Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164.

■ We are not inclined to agree with appellant that upon the facts of this case the county court was without jurisdiction to administer the estate of Moses Brown, and that therefore the appointment of J. W. Barber, as administrator of said estate, was void, and he was unauthorized to bring this suit. If, however, this contention of appellant's should be sustained, the judgment should not be reversed on that ground. The widow and children of Moses Brown having joined the administrator in bringing the suit, and having recovered with him the title and possession of the property as their homestead, we fail to see how it could harmfully affect any right of appellant for the administrator to have joined in the petition and to have recovered in his capacity as administrator, jointly with other plaintiffs, title and possession of the property. The property having been recovered as the homestead of the widow and children of the deceased is not subject to administration, and the joining of the administrator in the suit, whether or not he was legally appointed, could not possibly have injured appellant in the trial of the case.

It follows from what we have said that the judgment should be affirmed, and it has been so ordered.

Affirmed.