## INTERNATIONAL-GREAT NORTHERN R. CO. et al. v. ACKER et al.

### No. 1864.

Court of Civil Appeals of Texas. Eastland.

March 10, 1939.

Rehearing Denied May 19, 1939.

510

Andrews, Kelley, Kurth & Campbell and Sewell, Taylor, Morris & Garwood, all of Houston, for appellants.

Smithdeal, Shook & Lefkowitz, of Dallas, and Norman, Stone & Norman and H T. Brown, all of Jacksonville, for appellees.

LESLIE, Chief Justice.

This suit was instituted by C. D. Acker, as guardian of the estate of Ruth, Doris and Charles Gourley, minors; and as administrator of the estate of J. C. Gourley, deceased; Mary Gourley, Ruby Gourley Heaton et vir; H. H. Gourley et ux, to recover damages from International-Great Northern Railroad Company and Guy A. Thompson, Trustee thereof, for the death of J. C. Gourley, alleged to be the result of negligent collision (2/16/36) at public crossing by defendants' passenger train with automobile being operated by J. C. Gourley, who, together with wife and infant child were killed.

Defendants answered, alleging many grounds of contributory negligence. In the trial the court submitted the case to the jury on 85 special issues. The verdict acquitted plaintiffs of contributory negligence, but found negligence and proximate cause on part of defendants with respect to defendants' failure (1) to keep and maintain crossing in proper state of repair; (2) blow the whistle; (3) ring the bell; (4) excessive rate of speed; (5) failure to keep proper lookout; and (6) failure to use ordinary care after discovery of peril, etc. Issues 22 to 81, both inclusive, covered questions of contributory negligence charged against J. C. Gourley and wife. From judgment on the verdict for plaintiffs, defendants appeal, presenting 539 assignments of error, under 41 propositions.

■ Appellants' first proposition is dual in nature, asserting there is no evidence to support a favorable finding for plaintiffs on either contributory negligence or dis-covered peril, and that pleadings also are insufficient on the latter issue. The pleadings are deemed sufficient and if the pleadings and the testimony raise the issue of discovered peril and the jury finds upon that issue in favor of the injured party, the issues of primary negligence and contributory negligence become immaterial. Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663; Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W. 2d 304; St. Louis, B. & M. R. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024; 30 Tex.Jur. p. 684, sec. 35, et seq.

■ In passing on the questions presented by the proposition, a proper appraisal of the testimony requires an appellate court to consider all the evidence in the light most favorable to the party obtaining the verdict, and from the standpoint of the injured party just before and at the time of the accident, rejecting all evidence favorable to the defendants. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139; Barron v. Houston E. & W. T. R. Co., Tex.Com.App., 249 S.W. 825; Missouri, K. & T. R. Co. v. Merchant, Tex. Com.App., 231 S.W. 327; Jones v. Louisiana Western R. Co., Tex.Com.App., 243 S.W. 976; Lee v. International & G. N. R. Co., 89 Tex. 583, 588, 36 S.W. 63.

■ In effect, these authorities announce the rule that the law presumes that one killed at a railroad crossing was doing whatever was reasonably necessary for his own safety, and the defendant sued for his death must prove that he (injured party) was not so doing, in order to relieve itself of the consequences of its failure to give crossing signals. Such presumption in favor of deceased would be greatly strengthened by the circumstance that he would be less likely to expose to disaster a wife and infant daughter and deprive his other children of their parents.

■ A test of liability is whether or not under the circumstances a reasonably prudent person in Gourley's situation would have done substantially as he did on the occasion of the accident. If reasonable minds may differ as to whether Gourley exercised ordinary care, or whether the defendants actually discovered the perilous situation of the deceased in time to have averted—by the use of all means at their command, commensurate with the safety of themselves and other passengers, etc.,—injury to him, and failed thereafter to use

ordinary care to do so, then the question of contributory negligence, as well as the issue of discovered peril would, respectively, become a question of fact for the jury. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139; Trochta v. Missouri K. & T. R. Co. Tex.Com.App., 218 S.W. 1038; Ft. Worth & R. G. R. Co. v. Bowen, 95 Tex. 364, 67 S.W. 408; Barron v. Houston, E. & W. T. R. Co. Tex.Com.App., 249 S.W. 825.

As said in the Trochta case [218 S.W. 1039]: "To relieve defendant of liability on the ground that the engineer did what he thought proper in the emergency to avoid the injury would, in effect, abolish the doctrine of discovered peril, except in cases of willful injury. The test of liability is not whether the engineer after discovering the peril of deceased acted in good faith in an effort to avoid the injury, but whether he acted as a man of ordinary prudence would have acted under the circumstances."

█ In many respects the testimony relating to contributory negligence and discovered peril is common and incapable of separate grouping. In appraising the testimony on these questions, it should be borne in mind that appellants do not challenge the jury's findings which establish the following facts: (1) defendants' failure to keep and maintain crossing in proper state of repair and that it was a proximate cause of Gourley's death; (2) that the defendant failed to blow the whistle at 80 rods, etc., from crossing, and that this was a proximate cause of his death; (3) that defendants failed to ring the bell at 80 rods, etc., and that this was proximate cause of the death; and (4) that train was running 60 miles an hour at time of collision that this rate was negligence under the circumstances and a proximate cause of the death. The conduct of Gourley and wife at the time of the accident should be examined in the light of such established facts in determining whether or not they were then guilty of contributory negligence.

In substance, the evidence discloses that the parents of J. C. Gourley had resided at Troup, Texas, for about twenty years, and on the day of his death he was visiting them as he had often done through the years. Shortly before the accident, he, with his wife and child, left the home of his parents in a new Ford V–8 and traveled westerly on county line road about 400 yards, where, on reaching right-of-way of defendant, he turned north on a dirt road paralleling the railroad track and proceeded about 1,200 feet to a point where he turned from that road into a street or public highway crossing the defendants' railroad track. As he undertook to pass over the track (February 16, 1936) he was struck by defendants' north bound passenger train, known as the Sunshine Special. The collision occurred at 4:58 p.m. at a public crossing, in the city limits of Troup.

From center of railroad track to center of parallel dirt road is about 62 feet. The day was cold. The windows of the car were up and the wind was blowing from the north. For some distance before reaching the turn to make the crossing and for several feet after the turn, the view to the rear (south), or in the direction of the approaching train, was in a measure obstructed partly because the view was to the rear, partly because the train approached through a cut, and partly by a shoulder or embankment on the right-of-way near the public road and between that road and the railroad track. Until the turn to make the crossing any view the driver or occupant of the car would have of such approaching train would necessarily be gained by casting the eyes backward over the shoulder in such direction.

For about a mile south of the crossing the track was up-grade 1.1 per cent; that is, 1.1 feet to every 100 feet of track. On this day the train was late. After the collision it stopped at 4:58 p.m. That was its leaving time from Troup station, 1,896 feet north of the crossing. To have been on time it should have arrived "two to five minutes" before that time.

J. D. Davis, witness for defendant, testified "it was due to leave at 4:58, arrive two or three minutes ahead of that. Well, it was really late, because it was due to stay five minutes." Further, that at the time of the accident a south bound motor car or train was standing in the yard at the station. That it was propelled by power generated by gasoline and that smoke and noise were emanating from its motor. That it was due to proceed south over the same track at five o'clock p.m., or "as soon as the passengers got off the Sunshine."

Concerning the motor car at the station, another witness testified that he noticed it a minute or so before the collision, that it was or had been switching and was headed

south, that "steam" was coming out of the locomotive. This, of course, was in the range of vision of one passing over or near the crossing. Had the Sunshine Special been on time it would evidently have cleared the crossing before the arrival of Gourley. The possibility that Gourley may have seen or heard the south bound motor car at the station and took it to be the north bound train on time is merely a circumstance to be appraised by the jury. Quanah A. & P. R. Co. v. Hogland, Tex. Civ.App., 297 S.W. 761, 763. The position and movements of the motor car may have served in some degree to distract the attention of the occupants of the car. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139.

From the point where the Gourleys turned from the dirt road to cross the track the dirt road sloped into a depression, the lowest point of which is 38 feet east of the center of the track. This point is 3.36 feet lower than the railroad track. From that point the crossing approaches the track or dump with a ten per cent upgrade. This approach narrowed to a single track at the crossing. The immediate crossing and approach for some space on each side thereof was described by different witnesses, some saying it was "very rough", some "rough", others "not too rough" and still others "fairly smooth."

John Cook, in the grocery and feed business, testified that he passed over this crossing two or three times every day.

"Q. In going over, state how you would go over, whether in high or low, or change gears, especially from east to west? A. I always changed gears.

"Q. Why? A. Because I felt it was safer. I didn't want to kill my engine."

There was other evidence that the rails protruded above the filling from one to two inches and that there was only room for one car to make the crossing at a time.

Just before reaching this crossing, the train came through a cut, the depth of which is described by some as "slight" and by other testimony as "considerable." A civil engineer stated that about 200 feet south of the crossing, the level of the railroad track was 4.6 feet below the level of the parallel public road. That the level of the road was slightly more than 1.2 feet below the shoulder or embankment between public road and railroad.

There was a cattle guard 179 feet south of the crossing, and Hudgins, a photographer and witness for defendant, testified:

"Q. Did you observe a cut or dump just south of the cattle guard? A. On the east side of the railroad, yes sir.

"Q. About how deep was that fill and cut or dump? A. I judge about ten feet.

"Q. That is, above the railroad track? A. Yes sir."

If the train approached the crossing, as found by the jury, at the rate of 60 miles per hour, that was a speed of 88 feet per second. Upon that hypothesis, if the train had been a minute ahead of time, it would have arrived at the crossing, or a given point, at a moment when one familiar with the schedule might have assumed that it was 5,280 feet to the south (far out of sight). If it were two minutes ahead of time, one might assume that it was two miles further down the track. On the other hand, if it was a minute late, one at crossing familiar with the schedule, but unaware of the fact that it was late, might reasonably have assumed the train had passed the crossing and was in the station. The presence of the motor car at the station might suggest such assumption.

The engineer testified that he usually cut off the steam about the time he reached this crossing, and coasted into the station. Concerning his acts on this occasion he testified: "Q. In other words, you really struck the car with the full momentum and then cut it off? A. Yes."

The momentum of the train was great, and it did not stop until it carried the car 1,209 feet north of the crossing.

At the speed above noticed, but a few seconds would have placed the train far beyond the point of vision of anyone in the vicinity of the crossing or near approach thereto. If standing at 38 feet from the crossing, a train from the south could be seen but 800 feet down the track, as testified by appellants' witnesses, it follows that standing at that point, a train ten seconds down the track would be 880 feet, probably out of view. If it were 15 seconds down the track that would mean the train was 1,320 feet, and 20 seconds, 1,760 feet down the track, and a minute away, 5,280 feet to the south. Evidently the deceased could have looked at points nearer the crossing than 38 feet and still not have seen the train approaching. Until reaching the tangent,

353 feet of the crossing, the train came through the cut on a two per cent curve for the distance of about 2500 feet.

Circumstanced as they were, it would have been easy for the Gourleys to miscalculate or fail to appreciate how early would be the arrival at the crossing of the train moving so swiftly as this one was. That the obstructions referred to and the surrounding circumstances operated just before and immediately after the turn to go over the track and thereby interrupted to some extent the vision in the direction of the approaching train cannot be doubted. It is possibly a fair interpretation of this testimony that the existence of such obstructions, as well as the degree thereof at the time of the accident, was presented by testimony and circumstances conflicting in nature.

The foregoing testimony is more material to the issue of contributory negligence, but not without a bearing on the issue of discovered peril. The following testimony, in addition to throwing some light upon the issue of contributory negligence, is most material upon the issue of discovered peril:

Mr. Byrnes, the engineer, a man 67 years of age at the time of the accident, had had many years' experience in that capacity, and for some six years or more had been running trains over this particular track. Asked how he operated the train at the time of the accident, he testified:

"A. Well, about a hundred or so feet I seen an automobile about 20 feet from the tracks; he looked very strongly like he was going to stop, and I reached for the whistle—and while I was blowing, why, they got on the tracks somehow or other, just as I shut off and put on the brakes, they were on the tracks before I knew anything about it. * * *

"Q. Can you tell me why you didn't see them sooner than that? A. I didn't see them at all.

"Q. I said, can you tell me why you didn't see them? A. No, I couldn't tell you. I was looking straight down the track. The first thing that popped into my vision was an automobile coming very slowly.

"Q. You won't give me your best estimate as to the rate of speed it was moving when you saw it? A. No, I couldn't tell you that, either, because I don't know * * *"

This witness also testified that when he saw the automobile he saw all of it and that there was nothing about the condition of the crossing or right-of-way to keep him from seeing the automobile, or the occupants of the automobile from seeing him; that he never saw it until he was within 100 feet of the crossing. As to how far away he *could* have seen the automobile, he testified:

"Q. An automobile 20 feet from the track, 40 feet from the track, when the train was more than 300 or 400 feet away from the crossing, south of the crossing? A. I could see the car, of course.

"Q. You could see all of it? A. I could see all the car, yes sir.

"Q. In other words, you could see an automobile from 20 to 45 feet (from the crossing) 2500 feet away? A. Yes, I could see that. They could see it, too.

"Q. And they (operators of train) could see the wheels down to the ground, if the automobile is 20 to 40 feet east of the railroad track—you could see, on an engine you could see the wheels or clear to the ground, is that right? A. Yes, *but I didn't see this car until I came to the tangent,* and it was moving slowly, and I was going about 45 miles an hour.

"Q. How far away were you when you saw it? A. Oh, to the end of the tangent there.

"Q. Well, how far is that? A. Well, *I could see, but I didn't see it* until I got about 100 to 125 feet of the car, I didn't see the car at all."

The engineer testified the tangent began about 350 feet from the crossing. The measurement by a civil engineer established it as 353 feet south of the crossing. That is simply the point where the railroad track became straight and passed on over the crossing toward the station. This witness was further asked if the automobile was "less or more than 20 feet from the track" when he saw it. He answered: "Well, that isn't accurate enough; I couldn't make no accurate statement about that."

Questioned about obstructions along the right-of-way, he said:

"No there is very little embankment there at all. It is in perfectly plain view. * * * Perfectly plain view clear around the curve."

"Q. In other words, there was nothing to keep you from seeing that car then for several hundred feet back? A. Well, there was nothing to keep them from seeing me.

"Q. I am asking you a question; what was there to have kept you from seeing the car? A. Only the window, the blind window in front of the engine. * * *

"Q. What kept you from seeing it as it gradually came into your line of vision, Mr. Byrnes? A. I don't know, unless it was the side window. * * *

"Q. Anything in your line of vision down the track and close enough to the track to see,—you would have seen it, is that right? A. Well, you see, our windows are small, like that (indicating) and then there is a blind window on the side, then there is a big open window where we sit. Now this car came in view when I didn't probably—when this front window was obstructing my vision there. * * *

"Q. You mean to say the front window obstructed you, or the frame? A. The frame, the front end of the side window."

At another time, he testified:

"Q. How far away were you when you saw it? A. Oh, to the end of the tangent there.

"Q. Well, how far is that? A. Well, I could see it, but I didn't see it until I got about 100 to 125 feet to the car. I didn't see the car at all."

Another witness for the defendant, an experienced railroad engineer, by the name of Temple, testified that he was familiar with the particular locomotive involved in the collision, that it was modern and that there was nothing about the construction of the engine or locomotive that would interfere with the vision or prevent the engineer's seeing an automobile in the parallel dirt road or after it turned to cross the railroad track.

The materiality and the probative effect of the above testimony is reflected by such authorities as Brown v. Griffin, 71 Tex. 654, 9 S.W. 546, where, in the opinion by Judge Gaines, our Supreme Court held that: "Although an engineer testifies that he did not see a person who was standing on the track, and was struck by the engine, the view being unobstructed, the jury may presume that he did; and an instruction that if the engineer saw the person, and gave no signal, the company is liable, is not without evidence to justify it."

This is particularly pertinent in view of the finding that the engineer in the instant case failed to ring the bell, blow the whistle, etc.

The Griffin case was followed in International & G. N. R. Co. v. Tinon, Tex. Civ.App., 117 S.W. 936, 939, writ refused. This opinion is very enlightening upon the issue of contributory negligence as well as that of discovered peril. Upon the facts it held that, the failure of a person approaching a railroad crossing to stop, look and listen is not necessarily negligence as a matter of law. It was further held in that opinion as respects the testimony of the fireman who protested that he did not see the injured party in a place of peril, that the jury " * * * had a right to further infer, if the fireman was in a position to see deceased as she approached the crossing, that, in the discharge of his duty to keep a lookout for persons on the public road at or near the crossing, he did see her, and that, seeing her, he knew she was approaching the crossing from the west, on a run, at a time when a high wind then blowing was calculated to distract her senses of sight and hearing, already more or less impeded by a bonnet she was wearing, and apparently was oblivious to the fact that a swiftly and almost silently moving train, running behind its schedule time, was approaching the same crossing.

*     *     *     *     *     *

"If the jury might have inferred the fireman knew so much, then we think they might have concluded that he discovered before the train reached the crossing that deceased was in a position of peril from it."

To the same effect is Houston & T. C. R. Co. v. Finn, Tex.Civ.App., 107 S.W. 94, 98, in which it was held that the jury may infer that the railroad employees saw a person dangerously near to the track in time to avoid injuring him, notwithstanding their denials, where there were no obstructions to their view.

In the instant case, any obstruction near the turn or in the elbow thereof was not operative under parts of the engineer's testimony and especially when he came to the tangent 353 feet away. But his testimony makes the crossing and the approach thereto visible as far south as 2,500 feet.

Concerning the testimony in the Finn case, the court further said: "It was the province of the jury to attach whatever weight they saw fit to any portion of this testimony, and to draw from it such inferences of fact as might be legitimately authorized. They had the right to accept as true all, or only a portion, of what any one

witness testified, and to disregard such parts as they felt disposed to discredit."

In the opinion in Hines v. Arrant, Tex. Civ.App., 225 S.W. 767, 769, writ refused, (cited and quoted from by our Supreme Court in Houston E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S.W. 923), the evidence in very material respects like that in the instant case, was discussed in this language: "Was the evidence sufficient to justify the jury in finding that the engineer saw the appellee's peril in time to have avoided the collision? The testimony warranted the inference that the engineer was looking ahead to ascertain if the crossing was clear, and that there was no obstruction to prevent him from seeing the appellee as he neared the crossing. While the engineer testified that he did not see the appellee's danger until the latter was on the track, there were circumstances which indicated that he did. If he was keeping a lookout as he says he was, it is difficult to understand how he could have failed to see an automobile approaching and close to the crossing in time to give a warning by blowing the whistle or ringing the bell. According to the findings of the jury, he did see the appellee, and he failed to give any warning of the train's approach. The train was at the time going downgrade, and made less noise than is usually made by a steam locomotive. The appellee might have been stopped within a few feet of the crossing had he heard the whistle or the bell. It has been decided by the Supreme Court and by this court that under circumstances similar to this the denial of the engineer that he saw a party in danger is not conclusive of that question. Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; [Houston & T. C.] Ry. Co. v. Finn [Tex.Civ.App.] 107 S.W. 94; Texas & N. O. Ry. Co. v. House [Tex. Civ.App.], 208 S.W. 358; Trochta v. Ry. Co. [Tex.Com.App., 218 S.W. 1038]."

Other authorities with material bearing upon the question under consideration, and setting forth the proper effect to be given the testimony before us, are as follows: Gulf C. & S. F. R. Co. v. Higginbotham, Tex.Civ.App., 173 S.W. 482; St. Louis S. W. R. Co. v. Chestnut, Tex.Civ.App., 83 S. W.2d 1052; St. Louis S. W. R. Co. v. Anderson, Tex.Civ.App., 206 S.W. 696; Houston & T. C. R. Co. v. Stevenson, Tex.Com. App., 29 S.W.2d 995; Texas & N. O. R. Co. v. Brown, 14 Tex.Civ.App. 697, 39 S.W. 140, 141, writ refused; Houston E. & W. T. Ry. Co. v. Sherman, Tex.Com.App., 42 S.W.2d 241, 243; Galveston H. & S. A. R. Co. v. Wagner, Tex.Com.App., 298 S.W. 552; International-Great Northern R. Co. v. Pence, Tex.Civ.App., 113 S.W.2d 206. The facts of several of the cited cases are not believed to be so strong as those in the instant one on discovered peril.

Briefly summarizing the testimony on the issue of discovery and realization of peril, we have in substance: The Gourleys, on a cold day, in a closed automobile, steadily approached the crossing, going up-grade from about 38 feet. The speed of the car was such that it evidently could have been stopped in a few feet. The engineer did not testify he observed the occupants of the car looking at the train, or giving evidence that they were aware of its presence and approach. Ordinarily the driver of an automobile stops in a level place, rather than approach a track with a view of stopping on the up-grade near the track to await the passing of a fast train of several cars, 7 in the instant case.

Further, the engineer is emphatic in his testimony that he did not see the car until he was within 100 feet or 125 feet thereof. Then there is a positive statement by him that he saw it 300 to 400 feet before reaching the crossing. At another point he testified that he "could" have seen it but that he did not. And, in another portion of his testimony he states that a car on the crossing, or near thereto, should have been visible 2,500 feet south of the crossing.

In the absence of some circumstance to indicate that the occupants of the car were aware of the approaching train, it is questionable whether he had a right to assume that the car was going to stop, and in any event, it is probable that under the circumstances the jury concluded that such an assumption was unwarranted. All the circumstances detailed were to be considered by the jury in determining whether or not the assumption and conduct of the engineer reflected the prudence of an ordinary person under the circumstances. The jury found that he did not ring the bell nor blow the whistle, and he admits that he did not slow the speed of the train until it struck the car.

Under the testimony, and in light of the authorities, we readily conclude that the issue of discovered peril was undoubtedly one for the jury, and it would be a very unwarranted conclusion to say that, as a matter of law, the judgment was unwarranted on the theory of discovered peril.

If we are correct in the foregoing views on the issues of discovered peril, it is unnecessary to discuss questions involving contributory negligence, but our study of this record leads us to the definite conclusion that the testimony does not convict the deceased and wife of contributory negligence, as a matter of law. In approaching this question we realize the significance of the language in Lancaster v. Browder, Tex. Com.App., 256 S.W. 905, 906: "The facts of each case are different, however slight such difference may be; but a single circumstance, inconsequential when considered alone, may be sufficient, when taken in connection with all the other facts and surrounding circumstances, to, in the minds of all reasonable persons, make negligence appear conclusive, and therefore, a matter of law, or, on the other hand, to create a situation where reasonably minded persons may very properly differ in their conclusions—thus, in the latter case, presenting a question of fact, a jury question strictly, and one in which the determination of the jury must be, and has always been, held conclusive."

Especially applicable to the facts of the instant case is the opinion in Texas & P. R. Co. v. Fuller, 5 Tex.Civ.App. 660, 24 S.W. 1090; Id., 13 Tex.Civ.App. 151, 36 S.W. 319, 321, 322, writ refused. It was there held: "* * * it is insisted that it was conclusively shown that the track was open, and practically straight, for about a half mile and that the engine could be seen upon the track for this distance, and therefore it must be concluded that Mrs. Fuller could not have looked without seeing the engine. This inference or conclusion of fact was also a question for the jury, and it must be regarded as settled by the verdict, unless the conclusion supporting the verdict can be said to be without any sufficient basis. Let us analyze the facts, and see if this is true. The railroad was in the public street, and Mrs. Fuller had a perfect right to go upon it, and she had the right to expect that the usual and required signals of warning by an engine running upon the street and approaching crossings would be given. There is no statute defining what acts will constitute contributory negligence, and the test to be applied is, would an ordinarily prudent person act as did the injured party, under similar circumstances? No bell was rung or whistle blown to give notice of the approach of the engine. How far one may rely upon the sense of hearing as a safeguard, under such circumstances,

is a question for the determination of the jury, under the test above stated. In looking out for danger, the vision is usually directed only to that extent of distance from which danger may reasonably be apprehended. Objects lying in the direction of the view, but beyond the scope to which it is directed, rarely make an impression upon the mind. May Mrs. Fuller, as she approached the railroad, not have listened and looked, within reasonable range of danger, without apprehending the approach of the engine? *She could not hear it, perhaps, for the reason that no signals of its approach were given,* and it was only a light engine, and made little noise by running. *It does not appear that she looked just as she was about to step upon the track, but that she looked as she was approaching the track. She might have looked as she approached the track, within the ordinary range of danger from cars being operated at a reasonable rate of speed, and in a cautious manner, while the engine was not in the scope of her vision; and the engine, running at the high rate of speed indicated by the evidence, may have had sufficient time after she looked to reach the point of collision while she was on the track. We cannot say that such was not the fact.* The propositions urged were proper arguments before the jury, but if we should accept them we would assume the province of the jury, and seriously invade the right of trial by jury. [Missouri Pac.] Railway Co. v. Lee, 70 Tex. 496, 7 S.W. 857; [Dallas Rapid Transit] Railway Co. v. Elliott [7 Tex.Civ.App. 216] 26 S.W. 455; Brown v. Griffin, 71 Tex. [654] 659, 9 S.W. 546. We therefore conclude, as a matter of fact, that the evidence warranted the conclusion reached by the jury,—that the defense of contributory negligence was not established by proof." (Italics ours)

In the case of San Antonio Traction Co. v. Haines, 45 Tex.Civ.App. 289, 100 S.W. 788, writ refused, Mrs. Haines saw the street car coming, but thought she could get across before it reached the intersection, provided it continued to operate at the usual or reasonable rate of speed. It was held to be a question of fact whether she was or was not guilty of contributory negligence.

Boyd v. St. L. & S. W. R. Co., 101 Tex. 411, 108 S.W. 813, 814, is a case where the injured party entered upon the tracks where the accident occurred, looked and listened upon both sides of the street, but neither saw nor hear an engine or cars.

This was an act of precaution. The Supreme Court held contributory negligence, as a matter of law, was not shown and in discussing the testimony said: "Can it be said that a man who had already done what the law prescribes as ordinary care would be negligent in looking in the direction that he was going for 15 seconds in which he moved 70 feet? It was as necessary for him to look in the direction he was driving as on the sides of the street, for danger lay on each side and in front of him. It is enough for us to say in this connection that Boyd was not guilty of negligence as a matter of law, and therefore was entitled to the verdict of a jury upon the question of his negligence."

The parallel dirt road being traveled by the Gourleys extended north by the point where they turned to make the crossing. As before observed, for some distance before reaching this turn and several feet thereafter, if the appellees' testimony is to be taken as true, the Gourleys, had they looked, would not have seen the approaching train. Besides, in making the turn it was necessary for them to look ahead for traffic on the highway as well as traffic approaching them from the rear and likely to pass them on their left, as they were about to turn left, and in addition it was necessary for them to look out for such traffic as might be approaching from the west side of the crossing. At that point there was also the possibility of an approaching train from the south and in addition the noise of the motor car in the yard to the north. In the situation the excerpt from the Boyd case would have peculiar application to such state of facts, regardless of the circumstances that to the rear of the Gourleys there was the cut through which the speeding train was approaching on a two per cent curve until it reached the tangent, 353 feet from the crossing.

Since obstructions to the view of the approaching train, the nature of the weather, the possible distraction of the attention of the occupants of the car and kindred circumstances are reflected by the testimony in the instant case, we think the opinion of our Supreme Court in Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139, 140, is especially applicable here. There a party (Deloach) hailed the driver to stop and give him a ride to town. Among other things, it is said in that opinion: "Conceding that the physical conditions were such that as Kirksey approached said crossing he might have discovered the approaching trolley car in time to have avoided the collision had his thought and attention not been distracted by Deloach's signals to stop and his movements toward the automobile as it slowed its speed, there remained for the jury the question of whether under all the facts and circumstances, including said distractions, a reasonably prudent person, in Kirksey's situation, would or would not have done substantially as he did."

It will be here recalled that there is testimony that a motor car was at the station switching, etc., and that the crossing and approach thereto was rough and the rails protruded upward one to two inches.

Since the facts in Hines v. Arrant, Tex. Civ.App., 225 S.W. 767, 768, error refused, are so strikingly like many of those in the instant case, we give the following portion of that opinion dealing with the legal effect of such testimony: "On the day of his injury he rode in his automobile north about two blocks to where the street he was traveling intersects San Antonio Road street at a point about 50 feet east of the railway track. He then turned west, and, just as he was crossing the track, the car in which he was riding was struck by a south-bound train consisting of a motor car and two passenger coaches."

(After stating the testimony at length, the opinion proceeds): "This evidence makes it practically certain that, had the appellee looked after he turned west on the San Antonio Road, he could and would have seen the approaching train. The question is: Was his failure to do so under the circumstances contributory negligence as a matter of law? If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will, ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence. Trochta et al. v. Missouri K. & T. Ry. Co. ([Tex.] Com.App.) 218 S.W. 1038; Frugia

v. T. & Ft. S. R. Co., 36 Tex.Civ.App. 648, 82 S.W. 814; H. & T. C. R. Co. v. Wilson, 50 Tex. 142."

We cite the following additional authorities sustaining, as we believe, our interpretation of this record on the question of contributory negligence. St. L. S. F. & T. R. Co. v. Morgan, Tex.Com.App., 239 S.W. 607; Barron v. Houston E. & W. T. R. Co., Tex.Com.App., 249 S.W. 825, 826; Chicago etc. R. Co. v. Laro, Tex.Civ.App., 273 S.W. 684, 685; Mitchem v. Chicago, R. I. & G. R. Co., 107 Tex. 34, 173 S.W. 878; Southern P. Co. v. Walker, Tex.Civ.App., 171 S.W. 264; St. Louis & S. W. R. Co. v. Chestnut, Tex.Civ.App., 83 S.W.2d 1052, 1053; Adams v. Galveston H. & S. A. R. Co., Tex.Civ.App., 164 S.W. 853; Galveston H. & S. A. Ry. Co. v. Duty, Tex.Com. App., 277 S.W. 1057; El Paso Elec. Co. v. Adkins, 56 Tex.Civ.App. 202, 120 S.W. 218; H. & S. A. R. Co. v. Wagner, Tex.Com. App., 298 S.W. 552; Quanah Acme & P. R. Co. v. Hogland, Tex.Civ.App., 297 S.W. 761.

In support of appellants' contentions under this proposition they cite many authorities headed by International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106. Among these cases are: Galveston H. & S. A. R. Co. v. Bracken, 59 Tex. 71; Galveston H. & S. A. R. Co. v. Kutac, 72 Tex. 643, 11 S.W. 127; Galveston H. & S. A. R. Co. v. Ryon, 80 Tex. 59, 15 S.W. 588; Galveston H. & S. A. R. Co. v. Price, Tex.Com.App., 240 S.W. 524, and a great number of other authorities dealing with this type of case. We have considered these authorities in connection with those above cited and we think the instant case distinguishable from them upon the facts. Viewing the testimony from the standpoint of the appellees, and employing applicable rules of law, we think the testimony supports the conclusion hereinabove expressed.

■ The appellants' second proposition is that the "trial court erred in submitting to the jury Special issues 1, 2, 3, 4, 5 and 6 concerning the question of discovered peril over the defendants' objection that said issues were not raised by the pleadings." Under this proposition the brief sets forth these issues and states that "to each of the foregoing special issues the defendants objected on the ground that the issue was not raised by the evidence." Obviously an exception based upon the "absence of evidence" raises a different

question to one involving "absence of pleading." Neither does this statement in the brief show an objection pointing out insufficiency in pleading. There is no proposition or statement complaining of the overruling of a general demurrer below. Where a pleading is good as against a general demurrer but subject to special exception (for some defective statement), advantage of such defect cannot be taken by a mere objection to the testimony. Tillman v. Fletcher, 78 Tex. 673, 15 S.W. 161; McBride v. Puckett, Tex.Civ.App., 66 S.W. 242; Sigel v. Buccaneer Hotel Co., Tex. Civ.App., 40 S.W.2d 168, writ refused.

In appellants' brief, complaint seems to be made that plaintiffs' petition contained no separate counts presenting different grounds of recovery, etc. It is there stated: "The pleadings contain no separate counts, and none of the allegations of fact, as distinguished from legal conclusions, is alleged in the alternative to any other fact."

■ Careful consideration has been given the pleading. We believe it states separately and consistently different combinations of facts relied on for recovery. We discover no substantial disregard of the rules and statutes pertaining to pleadings. Art. 1997, R.S.1925; Rule 4, District & County Court, 142 S.W. xvii; Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031; Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744; 33 Tex.Jur. p. 420.

■ We do not understand the contention to be that consistency is required as between the groups of facts that ordinarily might be designated separate counts or alternative pleas. However, within the groups presented we discover no destructive inconsistencies in the allegations. As said by Judge Critz in Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41, 42: "It is the settled law of this state that the plaintiff has the right to plead, prove, and have submitted to the jury inconsistent theories or grounds of recovery * * *." See Reasoner v. Gulf, C. & S. F. R. Co., 109 Tex. 204, 203 S.W. 592; Mood v. M. E. Church of Cisco, Tex.Com.App., 296 S.W. 506; Central Power & Light Co. v. Johnston, Tex.Civ. App., 24 S.W.2d 762; 33 Tex.Jur. p. 420, sec. 10.

Further, if pleadings as to discovered peril should for any reason fail, at least

four other independent and sufficient grounds of recovery remained.

■ The third proposition is to the effect that the jury's findings on discovery and realization of peril, proximate cause, etc., "are without any supporting evidence, or in any event such findings are contrary to the overwhelming weight and preponderance of the evidence." This point involves a review of the great mass of testimony hereinbefore considered in the disposition of the first proposition. We there held adversely to appellants on this point, as well as their contention that contributory negligence appeared as a matter of law. A re-study of the testimony in the light of this contention does not change our views as there expressed. The testimony raised an issue of fact for the jury on each question.

In presenting this proposition, the appellants rely upon such authorities as Wichita Falls R. Co. v. Emberlin, Tex.Civ.App., 255 S.W. 796; Galveston, H. & H. R. Co. v. Sloman, Tex.Civ.App., 244 S.W. 268 (dissenting opinion by Justice Graves); Crews v. Schaff, Tex.Civ.App., 250 S.W. 749; Texas & N. O. R. Co. v. Adams, Tex. Civ.App., 27 S.W.2d 331; Texas & P. R. Co. v. Foster, Tex.Civ.App., 58 S.W.2d 557; Ft. Worth & D. C. R. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533; Jewell v. El Paso Elec. Co., Tex.Civ.App., 47 S.W.2d 328, 329; Autry v. Dallas Ry. & Terminal Co., Tex.Civ.App., 98 S.W.2d 254; Cantur v. South Texas Transfer Co., Tex.Civ. App., 110 S.W.2d 995, and others of like import. These authorities deal with facts distinguishable from those in this case. These opinions present learned discussions of sound principles of law applicable to the facts in those cases, but we do not believe the authorities are controlling in the situation presented by this record.

■ Further, if the point made by this and the second proposition be sustained, it would not have the effect of demonstrating that the trial court erred in overruling the appellants' motion for a new trial for the judgment would still rest upon either of four other grounds of recovery established by the verdict, viz., failure to blow the whistle, failure to ring the bell, unsafe crossing, and excessive speed. As said in McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901, 906, "Since the judgment finds support on one ground of negligence, the error of the court in improperly submitting another ground of negligence alleged was harmless."

The appellants group and brief together Propositions 4, 5, 6 and 7. They will be considered in like manner. The substance of these contentions is that the verdict of the jury convicting the engineer of failing to "keep a proper lookout in the direction in which the train was running as it approached the crossing * * * for persons using or about to use the same", is so inconsistent and conflicting with the affirmative verdict on discovered peril, proximate cause, etc., as to be mutually destructive of each other and forms no basis for the judgment.

■ Under the pleadings and testimony before us we regard this proposition as settled adversely to appellants' contention by numerous authorities, especially Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41, 43. In part, it is there held: "The failure of the motorman to keep a lookout and the result of such failure might be one cause, and his discovery of the danger later on and failure to use the means at hand to prevent the injury be another cause, and each of these causes might be a proximate cause of the injury."

The later opinion in Houston, E. & W. T. R. Co. v. Sherman, Tex.Com.App., 42 S.W.2d 241 (adopted by the Supreme Court), cites and follows the Weed case and St. Louis B. & M. R. Co. v. Cole, Tex. Com.App., 14 S.W.2d 1024, and also holds [42 S.W.2d 244]: "The findings of the jury in answer to special issues Nos. 9, 10, and 11, that the train operatives were negligent in failing to keep a proper lookout for the deceased or other persons on or about to go upon the crossing, and in answer to special issues Nos. 12, 13 and 14, that such operatives were guilty of negligence, proximately causing the death of the deceased after they actually discovered him and realized his danger, are not inconsistent, as a matter of law."

By the eighth proposition, the appellants contend that "The trial court erred in failing to grant defendants a new trial, because the answer of the jury to special issue No. 77 inquiring as to whether J. C. Gourley failed to bring the automobile which he was driving to a complete stop before going on the crossing, was without any evidence to support it." Only in the event that issue was answered "Yes", was the jury to answer issue No. 78, inquiring

if such failure was negligence, and if said issue 78, as to negligence, was answered "Yes", then (issue 79) was it a proximate cause of the death of J. C. Gourley and (issue 80) was said negligence the sole proximate cause of the death, etc.

Special issue No. 77 was answered "No." Hence, in obedience to instructions no answers were given to issues 78, 79 and 80.

█ If it be conceded that there is an absence of testimony to support the answer to issue 77, it would not follow that the trial court erred in overruling the motion for a new trial on that ground. The verdict on other issues would still be sufficient (aside from the finding on discovered peril) to support the judgment for the plaintiffs, because the verdict on other issues (22 to 81, both inclusive) acquitted the Gourleys of any negligence in many respects, and especially in being unaware (1) of the approach of the train, and (2) in leaving a place of safety and going onto the track.

█ Further, and as before observed, where a judgment in an action for a death rests on the finding of a jury as to the fact of discovered peril, it is not material to determine whether the deceased was guilty of negligence and whether same was the proximate cause of the injury. Missouri-Kansas-Texas R. Co. v. Cunningham, 118 Tex. 607, 23 S.W.2d 343; Dallas Ry. & T. Co. v. Bankston, Tex. Com.App., 51 S.W.2d 304.

█ █ An examination of the testimony convinces us that there is evidence to support the finding. The burden was upon defendants to establish the affirmative answer to issue No. 77 and in the state of the testimony, as we find it, the jury was not required to believe the testimony offered by the appellants to support their plea to that effect. The jury was at liberty to accept or reject the testimony, in whole or in part, and find accordingly.

Four or five witnesses gave testimony bearing upon the issue. In many respects it is indefinite and ambiguous. It is difficult to appraise. It is not unreasonable to say that the testimony strongly suggests that the automobile did stop somewhere as it turned and approached the railroad track. The engineer was emphatic that he did not see the automobile until it was within about twenty feet of the track. Pressed for an estimate as to how fast the car was driving per hour, he stated,

"I couldn't tell you that; I don't know, it was in the act, it looked like, in the act of stopping." Such circumstances were doubtless offered in justification of his belief, as stated by him, that he thought the car was going to stop, but they have a bearing on this issue.

Another witness for the defendants stated: "Well, I couldn't tell it stopped, because whenever the train hit the crossing it cut the view of the car off from us." The view of this witness was interrupted by the disturbing conduct of his child who had become frightened at the surrounding noise and approaching train. The witness, Ball, testified that the car did not stop until it "stalled" or "stopped" near the center of the track in front of the approaching train. According to her testimony this occurred when the approaching train was some 300 feet away. In that connection, she testified "it looked to me like it had time to have went across if it had kept going but it stopped. It stopped and when it stopped there the train was back here at the Gulf warehouse." Others testified the warehouse was about 200 feet from the crossing.

█ Such testimony was, of course, contrary to the testimony of the engineer and other testimony offered by the defendant. Evidently the car stopped somewhere and it is believed that the jury, in the exercise of its prerogative to reconcile the testimony, had a right to accept or reject testimony, and was fully warranted in reaching the conclusion it did in answer to issue 77. Texas & N. O. R. Co. v. Tilley, Tex.Com.App., 6 S.W.2d 86. It is fundamental that where there are inconsistencies and inherent improbabilities in a witness's testimony the jury is not required to accept same as true. Mills v. Mills, Tex.Com.App., 228 S.W. 919; Moore v. Conway, Tex.Civ.App., 108 S.W. 2d 954, 955.

█ There is no merit in the ninth proposition complaining that the judgment was entered upon an incomplete verdict because the jury did not find whether or not Gourley's failure to stop his automobile was negligence and whether such negligence was a proximate cause, or sole proximate cause of his death. This proposition erroneously assumes its major premise, viz., that "the jury committed an error in answering special issue No. 77 contrary to the undisputed evidence." (Italics ours). It is in the face of the

jury's "negative answer" to issue 77 and we have found that answer to be supported by the evidence. No objection was made to the manner and form of the submission of issue 77.

■ The tenth proposition raises the question that "The trial court erred in submitting to the jury special issue No. 80 of the court's charge, inquiring of the jury as to whether the failure of J. C. Gourley to bring the automobile which he was driving to a complete stop before going on the crossing, under instructions rendering the same conditional, (1) on a finding that he did so fail and (2) on a finding that such failure was negligence, *since the undisputed evidence showed that he did not bring his automobile to a complete stop before going on the crossing,* and the finding of whether such act was negligence was unnecessary to a determination of whether same was the sole proximate cause of the collision." (Italics ours) A time or two we have held that the evidence raised issue No. 77 and supported the jury's finding. The italicized part of the proposition is simply a statement in the face of that part of the record and our conclusions thereon. Also, our disposition of propositions 8 and 9 answer this contention.

■ Further, it is stated in appellants' brief and argument: "It follows from this rule that it is, of course, error for a trial court to condition the submission of a disputed issue upon a finding of an undisputed issue, and this error in the court's charge resulted in depriving defendants of the right to have the jury pass on this issue, *since the jury answered the preceding issue (77) contrary to the undisputed evidence.*" (Italics ours) Thus again is presented the same contention which has been disposed of in our ruling on propositions 8, 9 and 10. Since issue No. 77 was answered in the negative there would be no point in asking the jury if Gourley's failure to stop was the proximate cause of his death. The proposition, as stated, assumed a false premise and the issue requested, if it had been given, would have conflicted with those the court submitted without objections. This practice is condemned by the authorities. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920.

■ Again, no objections are made to the manner and form of the submission of issue 77. Under the authorities, it is permissible to give a conditional submission of issues. Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849.

Further, no objections or exceptions of a nature helpful to the trial court were made to the submission of the issues under consideration, conceding they might have been improved by constructive criticism.

■ As another answer to this proposition we think the appellees' first counter proposition to the appellants' tenth is sound. It is stated thus: "The issue of sole proximate cause of an injury as distinguished from a proximate cause simply does not arise when the suit is between the injured party or those in privity with him and the person inflicting the injury, but such an issue can only arise where it is claimed that the act of a third party was a proximate cause."

■ It seems to us that such issue of sole proximate cause presupposes that the injury is attributable to a third party, unavoidable accident or extraneous happening, etc., and if the injury was attributable to such third party, or he was the sole proximate cause thereof, it would be immaterial whether the act as to the third party was negligence upon his part or not. Holland v. DeLeon, Tex.Civ.App., 118 S.W.2d 489; Parker v. Jakovich, Tex.Civ. App., 115 S.W.2d 790; Wichita Valley R. Co. v. Minor, Tex.Civ.App., 100 S.W.2d 1071; Thweatt v. Ocean Acc. Corp., Tex. Civ.App., 62 S.W.2d 250.

Here no act of a third party is involved and the jury found there was no unavoidable accident and acquitted the deceased of all negligence and convicted defendants of various acts of negligence, as well as on the issue of discovered peril. At this point, we cite in answer to the contention, the opinion of our Supreme Court in Missouri-Kansas-Texas R. Co. v. Cunningham, 118 Tex. 607, 23 S.W.2d 343, 345, in answer to certified questions, in which one question was: "Did the trial court err in refusing to submit the issue of whether the negligence of deceased was the sole cause of his death?" The answering opinion in part reads: "If, under the evidence, the judgment rests upon the finding of the jury, as to the fact of discovered peril, it is not material to determine whether the deceased was guilty of negligence, and whether that negligence was the sole proximate cause of the injury." See, also, Dallas Ry. & T. Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 308.

Proposition eleven relates to an alleged error of the trial court "in failing to submit to the jury in *proper form* an issue inquiring" whether the deceased did a certain act, whether the act was negligence, and "whether such negligence (act) proximately contributed to cause the collision" etc., resulting in the death of Gourley, and whether it was sole proximate cause, etc. The question sought to be raised (by series of requested issues) is whether the trial court submitted an issue or issues "in proper form." It was raised as to several submitted issues. The whole complaint is predicated on the refusal of the trial court to give appellants' "special issue 48d" etc., which, according to the first statement under the proposition, "the defendants in due time and order requested the court to give to the jury." The court had submitted in some form substantially the issue or issues described by the appellants, but deemed by them not to be "in proper form." In that situation, if it be conceded the court's issue was "defective or erroneous" in form the error could be preserved and effectively assigned only by objection or exception at the time of the trial to the issues in fact submitted. If such exception was taken and overruled, that action of the court would furnish the basis for an assignment of error. Such an objection, however, should specifically point out to the court the error in the form and manner he is seeking to submit the issue.

This rule is well established and the following recent authorities remove it beyond any further doubt or confusion: Gulf C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849; Harris v. Leslie, 128 Tex. 81, 96 S.W.2d 276; Texas & N. O. R. Co. v. Crow, Tex.Com.App., 123 S.W.2d 649, Id., Tex.Civ.App., 101 S.W.2d 274; Wichita Valley R. Co. v. Minor, Tex.Civ.App., 100 S.W.2d 1071; Southern Underwriters v. Sanders, Tex.Civ.App., 110 S.W.2d 1258; Loving County v. Higginbotham, Tex.Civ. App., 115 S.W.2d 1110.

"Failure to object to a special issue, and by objection afford court opportunity to correctly state it, may not be avoided by requesting submission of correctly stated issue and assigning as error refusal of court to give it." Belzung v. Owl Taxi et al., Tex.Civ.App., 70 S.W.2d 288.

The state of the record with reference to the twelfth, thirteenth and fourteenth propositions is the same as that concerning the eleventh proposition. In every instance the court submitted an issue believed by appellants not to be in "proper form." The appellants sought to have the subject matter submitted in an issue or issues tendered by them. Upon the court's refusal to submit the tendered issue, error is predicated. For the same reasons and upon same authorities prompting us to overrule proposition 11 we overrule these propositions.

Further, since the jury found the defendants liable under the doctrine of discovered peril, acts of negligence, if any, on the part of deceased, or wife, would be immaterial. Missouri-Kansas-Texas R. Co. v. Cunningham, 118 Tex. 607, 23 S.W. 2d 343; Hines v. Foreman, Tex.Com.App., 243 S.W. 479, 484, 485. See Weed, Cole and Sherman cases, supra.

The fifteenth proposition predicates error upon the court's submission of issue No. 19 in that it stated an incorrect measure of the amount of damages to be awarded plaintiffs, etc. The explanation accompanying the issue is in part, "In answering the foregoing question you are instructed that in stating or fixing the amount of your answer thereto, if any, you will state such sum of money, if any, if paid now and as you find and believe from a preponderance of the evidence to be the present worth of the value of the pecuniary aid, if any, that you believe from the evidence the plaintiffs had a reasonable expectation that the said J. C. Gourley, deceased, would have contributed to them had he lived." The only objection here urged to this submission is as follows: "The defendant further excepts and objects to the submission of said issue and instructions accompanying same for the reason that it * * * does not positively and affirmatively limit the jury to a consideration of the present worth or value of the pecuniary aid which they had a right in law to expect from said J. C. Gourley, deceased." We are of the opinion that the objection to the charge or issue was too general to aid the court in giving a better one (Art. 2185, R.S. 1925; Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920) and that it stated an untenable ground of objection in that the plaintiffs, in our judgment, were not necessarily limited to what they had a right in law to expect from J. C. Gourley, deceased.

The court's explanation was more liberal to the appellants than would have been the issue if made to conform to appellants' exception. As was held in Carter v. Ferris, Tex.Civ.App., 93 S.W.2d 504, objections to court's charge upon the measure of damages should show what is proper measure of damages for the purpose of aiding a trial judge. There are numerous authorities to this effect.

We do not believe that the issue and explanation in connection therewith as given by the court are out of line with the law as stated in the leading authorities cited by appellants. In their brief they quote from Fort Worth & D. C. Ry. Co. v. Morrison, 93 Tex. 527, 56 S.W. 745, and the first sentence of that quotation is: "The charge given required the jury only to find the amount of pecuniary aid which the plaintiffs would have received from their son if he had not been killed, and assumed that such amount was fixed by law as the measure of damages. This took from the jury the right to consider the question whether or not a less sum paid now would compensate the plaintiffs for their loss of the aid which their son would have rendered as he probably would have rendered it during the whole of their lives."

The issue as submitted in the instant case contains no such vice as that here pointed out and as submitted it simply called for the *present worth* of such contribution as the evidence established that Gourley *might reasonably make had he lived.* The spirit of the issue and accompanying explanation is certainly in much greater harmony with these authorities than the suggestions carried by the propositions, and which, as stated, were not in fact reflected by any specific objections.

We take from the appellants' brief a statement from the opinion of Houston & T. C. R. Co. v. Turner, 34 Tex.Civ.App. 397, 78 S.W. 712, 715, as follows: "It unquestionably assumes that compensation for the pecuniary injury sustained by appellee in the loss of her husband must necessarily consist of a sum of money equal to such an amount as she might probably have received from his earnings and accumulations from time to time throughout his life, had he not been killed, and deprive them of the right to consider whether or not a less sum paid now would have compensated her for the loss sustained."

Obviously the issue and explanation submitted in the instant case avoided the very vice pointed out in the above excerpt.

By the sixteenth proposition the court's definition of "pecuniary aid" is challenged as being "too general, vague, ambiguous and indefinite to constitute a proper and adequate legal guide by which the jury might determine the answer to said special issue" (issue No. 19). Such is the language of the exception to the issue submitted. Certainly the definition was not as general, vague, ambiguous and inadequate as the exception thereto which the law requires to be specific in order to be helpful to the trial court in presenting a clearer and more accurately stated issue. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; Abilene & S. R. Co. v. Herman, Tex.Civ.App., 47 S.W.2d 915; Guillot v. Halman, Tex.Civ.App., 91 S.W.2d 402; Pecos & N. T. R. Co. v. Grundy, Tex. Civ.App., 171 S.W. 318; Colvard v. Goodwin, Tex.Civ.App., 24 S.W.2d 786.

Further, the definition does contain limitations and cautions to the jury in its deliberations, and we believe it is a substantial statement of the law confining the jury to the present worth of the pecuniary aid reasonably to be expected by the interested parties. Missouri K. & T. R. Co. v. Wallace, 53 Tex.Civ.App. 127, 115 S.W. 302; International & G. N. R. Co. v. McVey, 99 Tex. 28, 32, 87 S.W. 328; Id., Tex.Civ. App., 81 S.W. 991; St. L. S. F. & T. R. Co. of Texas v. Geer, Tex.Civ.App., 149 S.W. 1178, 1181. These authorities have a material bearing on the question of excessive verdict hereinafter considered.

The seventeenth proposition complains that in giving issue No. 19 "The jury is not positively and affirmatively instructed therein that they should not take into consideration anything other than the elements of damages referred to in the instructions accompanying said issue." Such were the exceptions to the charge. The objections did concede that "elements of damages referred to" were properly presented but this complaint is that the submission did not "affirmatively" instruct the jury "that they should not take into consideration anything other than the element of damage referred to." As stated in the discussion of the preceding assignments, the court did warn and caution the jury not to take some very material matters into consideration

in arriving at a verdict. For instance, as to the elements of recovery not allowed in such cases the court explained: "You will not allow the plaintiffs anything for any grief or sorrow on account of the death of J. C. Gourley, or for the loss of his society, affection and comradeship, and you should exclude all such considerations from your verdict."

· It would seem that the charge or issues must have been finally formulated after exceptions were taken. In any event if there were other elements or matters which the court should have warned against as improper or should have instructed the jury not to take into consideration, it is regrettable that the objections did not specifically name them in order to be helpful to the trial court. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; Abilene & S. R. Co. v. Herman, Tex.Civ.App., 47 S.W.2d 915; Guillot v. Halman, Tex.Civ.App., 91 S. W.2d 402, and other authorities hereinbefore cited.

■ In the light of the opinions in Hines v. Kelley, Tex.Com.App., 252 S.W. 1033; Gulf, C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260; Wells v. City of Henderson, Tex.Civ.App., 78 S.W.2d 683, there is no merit in the above contention anyway.

The eighteenth and nineteenth propositions are further assaults upon the giving of the same issue No. 19. A great multitude of objections were here made in a running way to the issue insisting in the main that the issue as given and explained was "ambiguous and confusing." In many respects, these exceptions are mere repetitions of previous ones and in no definite sense can it be said any particular objection was leveled at any particular vice, if any; in the charge or groups of issues submitted. However, after a careful consideration of the points we are of the opinion that no error is presented and overrule them for the reasons hereinbefore stated in considering other assignments leveled at the same issue. See Wells vs. Henderson, supra, for discussion of correct statement or issue presenting proper elements of damage in such cases.

■ We quite agree with the appellants that the court should submit a case so as to call for a correct measure of damages (International G. N. R. Co. v. King, Tex. Com.App., 41 S.W.2d 234), and further, that such submission should be in a man-

ner that would avoid authorizing the recovery of double damages. In the instant case, if the court committed either error, which we do not detect, it was not specifically pointed out either here or in the trial court.

■ Further, it seems to us, for the court to have undertaken to comply with the numerous vague suggestions embraced in either proposition 18 or 19 would have, in effect, amounted to giving a general charge, which is not permitted when a case is submitted upon special issues.

■ Propositions 20 and 21, respectively, assert that there is no evidence to warrant the submission of issue 19 as to what amount of money, etc., might have been contributed to Ruby Gourley Heaton, a married daughter, and that a verdict in her behalf of $2575 was without any support in the evidence. Unquestionably there is some testimony to support the verdict. The situation is substantially like that presented. in the case of Freeman v. Morales, Tex. Civ.App., 151 S.W. 644, 645, writ refused, wherein the court, through Judge Key, held:

"Several objections were urged against the court's charge, and rulings refusing requested instructions. The objections referred to are not regarded as tenable, and the points presented are not of such importance as to require specific discussion in this opinion. Only two objections are urged against the verdict, and one is presented under an assignment complaining of the action of the court in refusing to instruct a verdict for defendant, and the other charges that the verdict of the jury is excessive, outrageous, and unconscionable, 'because the evidence indisputably disclosed that the plaintiff was an adult, nearly 40 years of age, to whom deceased owed no legal duty of maintenance or support; and there was no evidence that during the life of deceased he had actually contributed pecuniary aid to the plaintiff—the preponderant weight of evidence, if not the undisputed and uncontroverted evidence, disclosing that whatever pecuniary aid was contributed by deceased was not to plaintiff, but to his grandchildren.' That assignment is submitted as a proposition, and it is not followed up by any other proposition. We overrule the assignment, because it is not supported by the record, which shows that there was evidence tending to prove that the deceased had contributed some pecuniary aid to the plaintiff.

"Whether or not the verdict is excessive, because it allowed the plaintiff more than the deceased would probably have contributed as pecuniary aid to the plaintiff, if he had not been killed, is a question that is not presented for decision, and upon which we express no opinion. We merely hold that, in so far as it is complained of in this court, the verdict of the jury is supported by testimony."

Adult children may recover damages in such cases for the wrongful death of parents. Missouri, K. & T. R. Co. v. Butts, 62 Tex.Civ.App. 539, 132 S.W. 88; Baray v. Escobedo, Tex.Civ.App., 259 S.W. 1099; Texas P. Ry. Co. v. Martin, 25 Tex. Civ.App. 204, 60 S.W. 803.

It is also the recognized law in this state that in such cases a child, whether adult or minor, may recover for wrongful death of a parent, and that in estimating the damages the loss of prospective accumulations of the deceased parent may be taken into consideration in estimating the amount of recovery. San Antonio etc. Ry. Co. v. Long, 19 Tex.Civ.App. 649, 48 S.W. 599; Id., 87 Tex. 148, 27 S.W. 113; 17 C.J. 1327, 1328; Denver & R. G. Ry. Co. v. Spencer, 27 Colo. 313, 61 P. 606, 51 L.R.A. 121, 124; Denton v. Midwest D. P. Corp., 284 Ill.App. 279, 1 N.E.2d 807, 810; Spiking v. Consolidated Ry. & P. Co., 33 Utah 313, 93 P. 838, 846; Nordlund v. Lewis & Clark R. Co., 141 Or. 83, 15 P.2d 980.

Further, no question of excessiveness is raised under these propositions, and whatever the division of the recovery among the children that would seem to be an immaterial matter to the appellants.

The twenty-second proposition asserts that the court erred in permitting Ruth Gourley to testify, over the objections of appellants, that the health of her small brother Charles was fair before her father's death, but had been poor since that time. It was objected to as immaterial, irrelevant and prejudicial matter. The court was then asked to strike it out. Later, the court, by written instructions, told the jury not to take into consideration any such testimony. If the original ruling presents error, which we doubt, this rendered it harmless. Rollins v. O'Farrell, 77 Tex. 90, 13 S.W. 1021; St. Louis S. W. R. Co. v. Kennedy, Tex.Civ. App., 96 S.W. 653, writ refused.

Further, there was no objection to the tenor or purport of the special instruction by which the court told the jury to disregard the testimony. Although unnecessary to decide the question, the effect of the following authorities is to hold that no error was committed in admitting the testimony: Texas Midland R. Co. v. Crowder, 25 Tex. Civ.App. 536, 64 S.W. 90; Lancaster v. Magrill, Tex.Civ.App., 244 S.W. 1078, writ refused; St. Louis S. W. R. Co. v. Bishop, Tex.Civ.App., 291 S.W. 343, 350. In this last case the jury apportioned "an extra allowance of $2,000 additional to one of the children who was both mentally and physically unable to care for himself. The record does not contain anything reasonably calculated to excite passion, prejudice, or other improper motive." Such testimony would seem to enlighten the jury in the discharge of their duty of apportioning the verdict.

The twenty-third proposition challenges the general verdict and judgment on the ground of being "grossly excessive" and thereby showing that it was arrived at as the result of passion, prejudice, etc., on the part of the jury.

A great deal of consideration has been devoted to this proposition. It is always a difficult one. The latitude and discretion permitted the jury in making such estimates and assessing such damages is well recognized and not to be denied, unless the amount assessed admittedly reflects the unfriendly feelings and unworthy motives suggested by the proposition.

The recovery for damages due to said death, the destruction of the automobile, burial expenses, etc., aggregate $29,175. No recovery was allowed the parents of J. C. Gourley and no appeal is taken from that portion of the judgment.

In passing upon this as well as other questions of fact presented, it is the duty of this court to view the evidence in the light most favorable to the appellees. The evidence is rather long and but a small portion thereof is set out in the appellants' brief. We have, however, made independent research into the statement of facts.

The deceased Gourley was 39 years old April 1, 1936, and came to his death by said accident February 16 of that year. His life expectancy was 28.9 years. He was a man of good health, strong physique, a blacksmith by trade, a skilled workman and machinist and an acetylene and electric welder, residing in a section of the state where his type of work was of growing importance. Acetylene welding drew one dollar an hour in wages. He was a man of integrity, temperate in habits, loyal and devoted to

his family, and in a financial way, getting ahead. He made fair contributions to the welfare of his family and each member thereof. He owned a well-equipped shop, for which the administrator had been offered $2,500 in cash. He owned a residence in Jacksonville with a Home Owners Loan against it amounting to about $897.-85, and on some such plan he was preparing to build a new home and shop in Rusk, Texas.

For several years prior to December, 1935, the income which he had enjoyed had been derived from the operation of a partnership composed of himself and one L. E. Green, who testified at the trial. This relationship was dissolved in December, 1935, just prior to his death in February, 1936. Immediately following the dissolution of the partnership his deposits in the bank reflected at one time $564.10 and $484.87 placed on his books of account. The record of his business reflects reasonable prosperity; some days better than others. All things considered, we cannot say that the jury returned an excessive verdict, or that it was prompted by passion, prejudice and a shocking mistake or misunderstanding of the facts in evidence.

In fact, each case seems to stand on its own peculiar state of facts. The opinion in one case may not be much of a guide in the disposition of another. That the amount awarded is not out of line with judgments that have been approved under facts of substantially the same import may be seen from the following cases, taken from appellees' brief.

Missouri P. R. Co. v. Lehmberg, 75 Tex. 61, 12 S.W. 838, judgment for $10,000 sustained for death of man 35 years of age, earning $1.25 a day.

Baker v. Harmon, Tex.Civ.App., 254 S.W. 517, judgment for $16,000—$7,000 for widow, and $9,000 for adult daughter—sustained for death of 62 year old farmer with life expectancy of 12½ years, earning about $1,000 a year.

Freeman v. McElroy, Tex.Civ.App., 126 S.W. 657, $22,000, judgment sustained for death of 53 year old man earning $75 per month granted wife and two daughters.

Texas & N. O. R. Co. v. Harrington, Tex.Civ.App., 241 S.W. 250, verdict for $35,000 was first approved and then reduced to $30,000. Deceased was earning $14 per week, ($728 per year).

Hines v. Mills, Tex.Civ.App., 218 S.W. 777, verdict for $40,000 sustained for death of man earning $85 per month.

Gulf C. & S. F. R. Co. v. Carpenter, Tex.Civ.App., 201 S.W. 270, 271, judgment for $35,000 sustained for death of man 37 years of age, who was earning about $150 a month.

Other authorities will not be set forth, but they are almost numberless, differing only in degrees of liberality of allowance in this type of case.

The twenty-fourth proposition is to the same effect as the twenty-third and presents that the verdict is so against the overwhelming weight of the evidence as to amount to prejudice, passion, etc., on the part of the jury. The conclusions expressed in the consideration of proposition 23 and previous propositions require that this one be overruled for the same reason. A different conclusion would be an invasion of the province of the jury.

It is not easy to appraise proposition 25, so multifarious is its nature. In one respect it asserts that special issue No. 2 was either on the weight of the evidence in making a material assumption that the automobile "was in a position of peril when it turned to go over the crossing" or it was duplicitous in different respects. The issue, as finally submitted, is undoubtedly different from the one to which the original objection was addressed. The objection reads thus: "* * * because the same (the issue) * * * assumes that the engineer operating the train in question discovered the presence of said automobile at or near said crossing at such point that the jury may believe from the evidence that said automobile was discovered in a position of peril by said engineer * * *." You do not recognize the submitted issue by this objection, for the issue suggests no such thought. It reads: "Do you find from a preponderance of the evidence that said engineer after he knew of the presence of said automobile occupied by the deceased J. C. Gourley, realized that it was in a perilous position?" The words "at or near said crossing" were evidently eliminated in response to some objection to the issue. Another objection raised in this connection is that the issue "assumed" that the automobile was in a perilous position and that the issue was duplicitous, etc.

The whole contention, or all of them combined (since they are found in one proposition), proceed upon a theory which

entirely disregards the effect of issue No. 1, and the conditional manner in which issue No. 2 as well as other issues were submitted. Issue No. 1 was as follows: "Do you find from a preponderance of the evidence that the engineer operating the locomotive knew of the presence of the automobile in which the deceased J. C. Gourley was, when or *after* it turned to go over the crossing in question and before the collision?" Taking the appellants' testimony alone, there would seem to be no issue on this point, especially for about .twenty feet before Gourley reached the crossing, but be that as it may, the issue, unobjected to, was answered "Yes" and then the jury was instructed that "If you have answered the foregoing issue [No. 1] Yes and only in that event, then answer the following issue" (No. 2). Issue No. 2 had incorporated therein the fact found by the jury's answer to the first issue, but if that fact had not been so found that would, under the conditional submission, have been the end of that inquiry and we do not interpret issue No. 2 as the assumption of a fact because the jury was first required to find the fact in answer to issue No. 1, and their answer established the fact which appellants charge to have been assumed.

In this manner, the issues presenting discovered peril, etc., were submitted, and we think they are free from the vice of unwarranted assumptions. The jury could not have failed to understand the issues.

Proposition 26 purports to raise substantially the same question of assumption with reference to issue No. 3. However, so far as appears from the brief, neither the statement nor argument under the proposition shows that issue No. 3 was objected to at all. What has been said in effect disposes of that proposition.

Further, if the issue of discovered peril were eliminated entirely, the judgment would still rest upon various grounds of recovery as hereinbefore pointed out. Also where a judgment in a collision case is supported by one ground of negligence, erroneous form of submission of another ground of alleged negligence is held to be harmless. Dillingham v. Currie, Tex.Civ. App., 92 S.W.2d 1122, and authorities there cited.

Proposition 27 complains of the failure of the court to submit many issues pertaining to proximate cause, to contributory negligence issues, and it is asserted that the court should have formulated correct issues, if necessary, so as to inquire if the alleged acts of contributory negligence on the part of the deceased and his wife "proximately contributed to cause the collision" and the death of the deceased. The issue submitted by the court inquired if the specified acts, etc., were negligence, and, if so, were they the proximate cause, etc., of the collision. The court correctly submitted these issues, "stayed in the beaten path in submitting the issue of proximate cause" (Phœnix Ref. Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 62) and wisely avoided the use of such words as "contributing", "contribute" etc. (Miller v. P. & S. F. R. Co., Tex.Civ.App., 35 S.W.2d 194, 202). The submission requested by appellants is not warranted by the following authorities as we interpret them: Foster v. Beckham, Tex.Civ.App., 85 S.W.2d 789, 793; Phoenix Ref. Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60; Dillingham v. Currie, Tex.Civ.App., 92 S.W.2d 1122, writ dismissed; Miller v. Panhandle & S. F. Ry. Co., Tex.Civ.App., 35 S.W.2d 194; Koons v. Rook, Tex.Com.App., 295 S.W. 592. From these authorities it will be seen that it is not a question of what contributes to cause an injury, but is a question of what is the proximate cause of an injury and this is true without regard as to whether it is the negligence of the defendant or of the plaintiff (the deceased in the instant case).

What has been said necessarily requires that proposition 28 be overruled. That complaint is that the court refused to give a large number of special issues inquiring if certain acts of J. C. Gourley and his wife "proximately contributed to cause the collision in question." See above authorities.

The twenty-ninth proposition questions the correctness of the court's definition of unavoidable accident. By numerous issues the court inquires whether the death of Gourley was attributable either to the negligence of himself, or to the negligence of defendants. A consideration of these issues raises a serious doubt in our minds that any question of unavoidable accident is to be found in the case. However, if no such issue was in the case, the submission thereof would be harmless. Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513. If we be mistaken in that view, it is our further opinion that no error was specifically pointed out. Further the submission of

the issue and definition were substantially in accepted form. Texas & P. R. Co. v. Edwards, Tex.Com.App., 36 S.W.2d 477; Dallas Ry. & Terminal Co. v. Darden, Tex. Com.App., 38 S.W.2d 777; Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956.

■ The thirtieth proposition asserts the court erred in that he did not instruct the jury in respect to the "burden of proof" on the issue of whether negligence of Gourley and/or his wife was the sole proximate cause of the collision. At this point, expressing no opinion as to the soundness or accuracy of submitting in the case any issue embodying sole proximate cause based on the negligence of Gourley and wife, or either, it is apparent that the trial court tendered to the litigants below an original charge or list of special issues in which each of such issues began, "Do you find from a preponderance of the evidence" etc. The appellants objected to the submission of said issues in such form, and instead thereof tendered to the court for submission some 30 issues relating to the same subject matter, but beginning with the words "Was the failure * * * etc. the sole proximate cause of the collision, death" etc. In response to what appears to be an incorrect criticism of the original charge and in compliance with the request accompanying appellants' issues, the trial court formulated the issues that were submitted in harmony with appellants' original objections, etc., and their tendered issues. Therefore, the error, if any, committed by the trial court was invited by the appellants and should not serve as a ground for reversal of the judgment. In the trial of such complicated cases the efforts of the trial court ought to be supplemented by helpful suggestions.

The question of sole proximate cause under the facts of this case has heretofore been considered and authorities cited in connection with that discussion. The findings on discovered peril run through the entire consideration of the case.

■ The thirty-first proposition complains that the plaintiffs' petition was "replete with improper, inflammatory and prejudicial allegations" and that the court erred in overruling many special exceptions stated in the brief to "appear on page 20 to 46 of the transcript." The statement under the proposition as found in the brief contains but twelve lines devoted to a great mass of contentions and matters necessarily involved. Not fewer than 56 different matters appear to be involved in the proposition although that information is not to be gained from the statement. We do not think the proposition is entitled to consideration. If we be mistaken in that view, then an independent exploration into the voluminous record gives us the following impression thereof: There were many matters alleged which the plaintiffs were doubtless unable to establish by testimony and for aught we know there may have been some not designed to be so established. The presumption is, we think, that the counsel for appellees, in obedience to the rules of practice and even sound ethics, were endeavoring to do no more than safely and abundantly present the issues upon which their clients relied for recovery. Considering the record as a whole, and so far as we have been able to analyze the question, we are of the opinion that the proposition is without merit.

■ ■ The thirty-second and thirty-third propositions will be considered together. Respectively, they complain that issue No. 20 should not have been submitted (1) because there was no evidence of "sufficient probative force" to show what the "reasonable, proper and necessary expenses of embalming and burying" said J. C. Gourley were, and (2) for the reason the verdict was without any evidence to support it." The jury answered $225. The deceased met his death as reflected by the record. The testimony presented in great detail the results of the collision as evidenced by his mangled body. It is common knowledge that the human body is generally embalmed and buried. The administrator, without objection on the part of the appellants, testified that it cost $225 to obtain the services in question. That such a claim had been approved in the probate court as reasonable and proper. The testimony as a whole is amply sufficient to support the verdict.

Being conscious of the proprieties and amenities of civilized life at this day and time, it would seem that the court could well take notice that where one is crushed to death as in the instant case, embalming and burial would not only be necessary and reasonably worth $225, but a much larger sum.

In Texas & P. R. Co. v. Gurian, Tex. Civ.App., 77 S.W.2d 274, 278, the court held: "Appellant's objection to the submission of issue 9C because there was no

evidence showing that the doctor's and hospital bills were necessary is without merit. While there is no direct evidence to the effect that these things were necessary, yet the facts lead to such conclusion and amply justify the jury's finding thereon."

In Texas & P. R. Co. v. O'Donnell, 58 Tex. 27, Chief Justice Gould, after stating that the judgment was unusually large, said "that the permanent loss of her arm, amputated as it was at the shoulder joint, would reduce her capacity to earn money, would seem to be an inference which the jury could draw for themselves, without the aid of witnesses."

In Irwin v. Irwin, Tex.Civ.App., 110 S. W. 1011, 1012, the court said: "We can take judicial notice that the sum of $24.50 is not in excess of what would be necessary for that purpose", to-wit, necessaries for an abandoned wife.

By analogy, we think these authorities applicable to the facts of the instant case.

By the thirty-fourth proposition, it is asserted that the evidence was not of such "probative force" to show reasonable, fair, cash market value of the automobile involved in the collision just immediately before the collision occurred, and the thirty-fifth proposition asserts that there was "no evidence" of the value found by the jury. The verdict upon this issue was $650.

■ By propositions thirty-six and thirty-seven the same contentions are made against the verdict of the jury in response to issue 20b, inquiring the "reasonable, fair, cash market value of the automobile * * * after it was removed from the locomotive after the collision." To this interrogatory the jury answered $50. The car was a practically new Ford V-8 with not more than a month's family use. The picture of the car after the collision is in the record. As pictured it presents the appearance of an utter wreck. The administrator of the deceased's estate testified that he knew the value of the car before the collision and sold the remains thereafter for $50. He stated the value of the car before the collision to be $700. No objection was made to his testimony in this respect. The $50 transaction had been approved as fair and reasonable. The testimony reflects the history of the purchase of the car, the amount paid, the deferred payments, liens, etc., and all the facts and circumstances reflecting the type of car and the use it had undergone. We think the evidence abundantly supports the finding of the jury.

In Texas P. & L. Co. v. Hale, Tex.Civ. App., 276 S.W. 746, 748, it was held that the Court of Civil Appeals may "take judicial cognizance of a well-recognized rule that Ford cars and other automobiles are sold new for a fixed price all over the United States, or at least all over this state [Texas]" and in the course of that opinion it is stated: "We think that a jury would be authorized to find that a new car which had been used only four months with reasonable care in the use thereof was substantially as valuable as a new car * * *." Upon this point, see the opinion in Simmonds v. St. L. & B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332.

Propositions 38, 39, 40 and 41 raise very much the same question. They are predicated upon the contention that the evidence showed that the defendant, International-Great Northern Railway Company, at the time of the collision, and at the time of the trial, was a party to bankruptcy proceedings in the United States District Court and that the defendant Guy A. Thompson was at all such times the duly appointed and acting trustee of said Railroad Company and had full and complete control of it and its properties under the orders of said court. It is respectively contended (1) that the Railroad Company's property being under the control of the trustee so appointed, no judgment, legal in law or fact, could be rendered against the company; that the "entry of such judgment" was a denial of the company's rights and immunities under Acts of Congress relating to bankruptcy, etc., and an unwarranted interference by the trial court with the administration of the estate of a bankrupt; (2) that under the circumstances the "trial court was without any power or jurisdiction to award interest on the amount of damages awarded to plaintiffs"; and (3) for the same reasons the trial court erred in entering judgment providing for execution, etc.

■ We think the trial court's judgment a complete answer to these contentions, whether considered severally or collectively. That judgment in providing available and appropriate processes and writs for its enforcement specifically guards against any interference with the bankruptcy proceeding or administration of the properties of the I & G N Ry Company in the Federal Court. In one

portion of the judgment we find this language: "It is further ordered, adjudged and decreed that no process authorized herein or issued hereunder shall be used to interfere with the lawful custody, control or possession of said property by said court or by said trustee or the successors to said trustee appointed by said court, or to obstruct any valid order made by said court."

The judgment further decrees: "If this judgment be paid by said trustee, etc., or by the defendant I & G N Ry Company, etc., then no execution shall issue against the trustee Guy A. Thompson, or his successor, or against I & G N Ry Company; but if said judgment be not paid by the trustee or his successor * * then upon the termination of said proceedings, whether by reorganization or by discontinuance thereof, execution shall issue against I & G N Ry Company, its successors or assigns."

Properly interpreted, the judgment is drawn so as to avoid any of the vices charged by these propositions. The trial court's judgment is merely referred to the court in bankruptcy for such observances, if any, as may seem fit and proper under the law governing the bankruptcy proceedings or the reorganization of the company. It is not designed to affect or conflict with any decree, settlement, compromise or composition of creditors that may obtain or finally result in Federal Court with reference to this proceeding.

Further like propositions have been heretofore considered and overruled by this court in International-Great Northern R. Co. v. Lucas, Tex.Civ.App., 123 S.W.2d 760, 769. We find no reason to alter the conclusions therein expressed.

For the reasons assigned, the judgment is affirmed.

On Motion for Rehearing.

Rehearing denied.

FUNDERBURK, Justice (dissenting).

The opinion in this case was the product of this court's labors upon a record consisting of 495 pages of transcript and 815 pages of statement of facts. More extraordinary, the opinion represented the court's conclusions of fact and law made in response to 539 assignments of error! It would be remarkable, indeed, if any court under such circumstances should escape the hazard of failing to appreciate one or more meritorious grounds for the reversal of the judgment. The writer cannot escape the conviction that a few errors committed under such circumstances might not inappropriately be considered as invited errors.

Appellants' motion for rehearing placing, as it does, emphasis where emphasis is due, makes clear to the mind of the writer that our opinion does violence to the principle that a plaintiff's allegations of the essential facts constituting his cause of action, or matters necessary to the maintenance thereof, may not, except in the alternative, or by separate counts, be joined with the averment of contradictory and inconsistent facts without having the effect of the mutual destruction of both.

In English v. Terry, Tex.Civ.App., 85 S.W.2d 1063, 1066, we took occasion to say: "We have noted seemingly a growing tendency in negligence cases for the plaintiff to specify so many and detailed separate and independent grounds of negligence, * * * that quite often it appears in the very face of the pleadings that if a particular act or omission is a proximate cause of the injury, another act or omission also alleged to be a proximate cause could not be. In such cases the allegations nullify each other, just as certainly as the findings of the jury in this case, as above discussed, have nullified each other." Further, upon the same point it was said that 'in this case it was alleged that the defendants were negligent in that the brakes on the motortruck were defective and out of repair, in that they were insufficient and inadequate to control the movements of said truck, and that same was a proximate cause of the injuries. It is quite plain that if that ground of negligence was a proximate cause of the injuries, then there was no independent ground of negligence, as was also alleged in driving the truck on the left-hand side of the road. An act or omission impossible to be avoided could not be, in itself, negligence proximately causing an injury. Manifestly, there could be no duty to avoid the impossible."

Recognition and application of this principle was the basis of this court's action in holding the petition in Dallas Ry. & T. Co. v. Redman, Tex.Civ.App., 88 S.W.2d 136, subject to general demurrer. We can perceive of no theory upon which the Supreme Court, in passing upon the application for writ of error in that case, could have approved the judgment, and yet have disapproved our holding upon that point.

Most everything said in that opinion is equally applicable to the instant case.

In plaintiffs' petition each and every one of the acts or omissions alleged to be negligence and a proximate cause of the death of J. C. Gourley was rendered immaterial to plaintiffs' right of recovery by further allegations as follows: "* * * the engineer did actually discover said automobile and the persons riding therein before they went upon said track and realized that they were approaching said track and were about to go upon and attempt to cross same and their perilous position on account thereof *in time* so that by the exercise of ordinary care to use all the means at his command and consistent with the safety of his train its crew and passengers, *he could have,* by reducing the speed of the train, or sounding the whistle or ringing the bell, or by all of said means, as soon as *he did discover the presence and peril* of such persons, avoided or lessened the injuries to them, or, by ringing the bell or sounding his whistle, or by doing both, caused them to stop before they went upon the track, or thereby have given the occupants of said automobile warning of the danger and more time to remove themselves from danger; but he negligently failed to ring the bell and sound said whistle and give warning as he could or should have done, and to lessen or attempt to lessen the speed of said train, each and all of which was negligence, and *such negligence was a proximate cause of the injuries to and death of said J. C. Gourley."* (Italics ours.)

If, as thus alleged, the breach of duty to exercise ordinary care by reducing the speed of the train or ringing the bell or sounding the whistle, or by all together, arising from the actual discovery of the alleged peril, was negligence, which proximately caused the collision and consequent injury, then as between such negligence on the one hand and all previously alleged grounds of negligence on the other, the former might just as well have been denominated the *sole* proximate cause. Any concurrence of that cause with any other alleged negligence as causes is necessarily excluded. What did it matter that the crossing was rough, or that the train was running 55 or 60 miles an hour, or that there was a failure to ring the bell or sound the whistle, or that, as alleged, if the bell was rung or whistle sounded, the occupants of the car by reason of defects in the bell and whistle could not have heard

same; or that, by reason of a dump and/or defects in the construction of the cab windows, the engineer could not have seen the automobile sooner than he did see it? All these things, if negligence as to others, could hardly be said to be negligence as to the occupants of the automobile in question, since regardless of same, the simple observance of defendant's duty arising upon the actual discovery of the position of the automobile was sufficient for the protection of such occupants from injury. But even if the prior acts or omissions be regarded as negligence, their causal connection with the collision was broken by the fortuitous discovery by defendant's engineer of the automobile "in time", by the exercise of ordinary care to prevent the collision. For the prior negligence to continue to operate as a cause of the collision it would be necessary that same have influenced the ability or will of the engineer to protect the occupants of the car, which, according to the above quoted allegations, was not the case. All prior acts of negligence were as proximate causes of the collision excluded just as effectively by the alleged timely discovery of the automobile as the alleged negligence in failure to maintain a flagman or trainman at the crossing was in Harris v. T. & P. R. Co., Tex.Civ.App., 28 S.W.2d 1093, held by this court—speaking through Judge Hickman—to have been excluded by the actual knowledge of deceased of the presence of the train.

The question is, however, whether, granted that the plea of discovered peril excluded all other grounds of negligence as proximate causes of the injury, may the judgment be supported alone upon the issues of discovered peril? Generally, there is no necessary conflict between allegations comprising a plea of discovered peril and allegations of primary negligence as proximate causes of the injury. It all depends upon the nature of the allegations. When the allegations of discovered peril are not, as they may be, alleged in the alternative, they may be sufficient to show a right of recovery if not contradicted by other alleged facts.

It was alleged, among other things, that a proximate cause of the collision was the maintenance of a schedule of 55 or 60 miles per hour "because said train would be running at said rate of speed when said crossing, or any object thereon *first came within the field of vision* of the operators of the

locomotive pulling said train, at which rate of speed *it was impossible for the train after the crossing came within the field of vision of the operators of said train to be stopped before going upon said crossing."* (Italics ours) This was alleged to be negligence and a proximate cause of the injury. If true, then manifestly the other allegations were not true to the effect that the engineer discovered the automobile in time to prevent the injury. No evidence could be offered to support either of these allegations without contradicting the other.

Another of the alleged proximate causes of the injury was the failure of the defendant to keep a lookout "to discover the person or persons about to use the crossing and the presence of the automobile in which J. C. Gourley and his wife were traveling near or on the track at such crossing but this they negligently failed to do by reason of which *they failed to discover the presence of the automobile* in which J. C. Gourley and his wife were traveling *as soon as they could or should have;* that if they had kept a proper lookout they would have discovered the automobile and the presence of J. C. Gourley and his wife *on or near the track* and his dangerous position and situation *in time to have avoided* or lessened the injuries to him *and his death,* and their failure to keep such lookout was negligence and was a direct proximate cause of the death of J. C. Gourley." (Italics ours) It should require no argument to demonstrate the proposition that if failure for any reason to discover the automobile in time to prevent the injury was a cause of the injury, then allegations to that effect that the automobile was discovered in time to prevent the injury could not be a proximate cause of the injury, and vice versa.

The reasons why such pleadings cannot be held sufficient to support judgments are fully set out in the Redman case, supra, and it will serve no useful purpose to repeat the same here.

In determining the question of the existence of evidence to support essential issues, we must begin by taking as true against the plaintiff all the allegations of the petition not alleged in separate counts or in the alternative. As we also had occasion to say in National Hotel Co. v. Motley, Tex.Civ.App., 123 S.W.2d 461, 462 (point 15 of the syllabus), "In considering what is claimed to constitute evidence of negligence and proximate cause, allega-

tions of plaintiff's petition may be considered, since no evidence could be available to support such issues which was contrary to facts as alleged in pleadings."

Under this rule, considering only evidence not contradicted by any of the inconsistent allegations of the plaintiffs' petition, the evidence, in the opinion of the writer, simply does not support essential issues to a recovery by the plaintiffs, all resulting, of course, from the contradictory allegations.

This naturally leads to the conclusion that the judgment should be reversed and the cause remanded.